THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HENRY PAYNE, JR., Defendant-Appellant.

Fourth District   No. 13465

Opinion filed December 23, 1976.

GREEN, specially concurring.

William F. Fitzpatrick, of Pontiac, for appellant.

John G. Satter, State's Attorney, of Pontiac (Robert C. Perry and James G. Condon, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE REARDON delivered the opinion of the court:

The defendant, Henry Payne, Jr., was found by a Livingston County jury to be guilty of robbery in violation of section 18—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 18—1).

On appeal, defendant raises five issues for our review, however, we need only address defendant's allegation that his right to due process was violated when the State, upon request, neglected to furnish him a police report containing information favorable to his defense.

After pleading not guilty, the defendant, on March 12, 1975, filed a motion for discovery pursuant to Supreme Court Rule 412 (58 Ill. 2d R. 412) requesting, in pertinent part, that the State furnish:

> "1. The names and last known addresses of persons whom the State intends to call as witnesses, together with their relevant written or recorded statements, memoranda containing substantially verbatim reports of their statements, and a list of memoranda reporting or summarizing their oral statements, which the State has in its possession or control; this request is made pursuant to Supreme Court Rule 412(a).* * *
>
> * * *
>
> 8. Any material or information within the possession or control of the State, which tends to negate the guilt of the defendant as to the offense charged in this cause, or which would tend to reduce the defendant's punishment therefore; this request is made pursuant to Supreme Court Rule 412(c)."

The court ordered that the State comply with defendant's request by March 19, 1975. Accordingly, the State submitted to the defense a written answer to the motion for discovery with several police reports and copies of exhibits attached. The State intended to introduce the exhibits at the trial. The State, however, did not furnish Officer Curtis Van Note's four-page report which stated, in pertinent part:

> "I got a call from the County at 7:43 p.m. advising me to go to Simmie's Store, that there had been a robbery there. As I arrived at the store Mrs. Hummel came running out to the car and said two colored subjs. had just held them up at gun point. I gave this information to the County and went inside the store where I met Mr. and Mrs. Vincent W. Endres, who were in the store when this took place. Also in the store was Marna Hummel, who works there. These people told me the following as what had happened. * * *
> The two Negro subjs. are described as follows,
> 1. 5'7" to 5'8", around 30 years old, heavy set, wearing dark pants and a sweater.
> 2. 5'8" to 5'9", around 30 years old, 170 to 175 pounds, wearing a full beard and moustache. Had on dark colored pea coat and dark blue bell bottom trousers.

No one saw the vehicle involved in this nor the direction of travel. At 9:10 p.m. while at McDonald's having coffee I got a call from Sgt. Gayon to go back to Hummel's, that they knew the car and could describe it. After returning to the store, Marna said the car was Buick Electra 225, maroon in color. I asked her how she knew this and she said Joe Ortega had come into the store after we left and wanted to know what had happened. She told him and he said I bet it was the same ones that were here Saturday. She then remembered that two colored subjs. had come to the store Saturday and one of them looked inside and then left. She said this was the type of car they were in. At 11:10 p.m. I got a call to go to the Joe Speedon house as Mrs. Speedon saw the subjects that did this. She said she had been to the store shopping around 7:30 p.m. and as she was leaving two colored subj. were going in. She described them as the people in the store did. The only car she saw was a light green or creamed colored one which was parked just north of the doors. She thought this car had 75 Ill. plates on it. She said there was no one else in the car. Mrs. Speedon also stated that when she left the store there was no one else in the store but Mrs. Hummel and her daughter.* * * "

Marna Hummel was the only one of four eyewitnesses who was not called by the State to testify at the trial. The police report was not furnished to the defense until after the completion of the trial.

The origin of the prosecutor's duty to disclose evidence favorable to the defense can be traced to *Mooney v. Holohan* (1935), 294 U.S. 103, 79 L. Ed. 791, 55 S. Ct. 340, in which a labor leader convicted of first degree murder petitioned for a writ of habeas corpus, claiming that he had been convicted through the use of manufactured physical evidence and testimony that the prosecutor knew to be perjured. The Supreme Court, in affirming the denial of the writ on procedural grounds, found in dicta that the alleged prosecutorial misconduct was inconsistent with the concept of a fair trial and constituted a denial of due process. Seven years later, in *Pyle v. Kansas* (1942), 317 U.S. 213, 87 L. Ed. 214, 63 S. Ct. 177, the court reaffirmed and broadened the principle it had expressed in *Mooney*, proscribing the knowing use of perjured testimony and the deliberate suppression of evidence favorable to the accused. In *Pyle*, as in *Mooney*, the court reasoned that the prosecutor's misconduct had deprived the defendant of his constitutional right to a fair trial and thus rendered his conviction void. In two subsequent cases, the court extended its holding in *Pyle*, ruling that defendants had been denied due process where the perjury of a witness had been known to the prosecutor but not suborned by him, and where the evidence was relevant only to sentencing (*Alcorta v. Texas* (1957), 355 U.S. 28, 2 L. Ed. 2d 9, 78 S. Ct. 103, or to the

credibility of a prosecution witness (*Napue v. Illinois* (1959), 360 U.S. 264, 3 L. Ed. 2d 1217, 79 S. Ct. 1173) rather than directly to the defendant's guilt.

In all of these cases, the court focused on the conduct of the prosecutor and the central inquiry was whether the defendant had been denied a fair trial because of the improper role played by the prosecutor in obtaining his conviction. The Third Circuit's decision in *United States ex rel. Thompson v. Dye* (3d Cir. 1955), 221 F.2d 763, marked a departure from the *Pyle* line of cases both in rationale and application. Finding a denial of due process in the suppression of testimony that could have corroborated the defendant's exonerating claim of intoxication, the court ignored any issue of the prosecutor's blameworthiness and, instead, dealt only with the effect of the suppression on the defendant's ability to present his defense. The court held that whether the prosecutor's conduct had been wilful or merely negligent, his failure to communicate favorable evidence had deprived the defendant of a fair trial. In a subsequent case, the Second Circuit applied the *Thompson* rationale to the negligent suppression of evidence in the hands of government officials other than the prosecutor. (*United States v. Consolidated Laundries Corp.* (2d Cir. 1961), 291 F.2d 563.) In both *Thompson* and the Second Circuit's decision, the focus was thus not whether the prosecutor behaved improperly, but, rather whether the defendant lacked access to information possessed by the government that could have changed the outcome of his trial.

In *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, the Supreme Court finally spoke directly to the issue of prosecutorial suppression of evidence favorable to the accused and ratified the development of the fair trial concept that had taken place in the courts of appeal: "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194.) The court said that the unfairness, and hence the violation of due process, inherent in the suppression of material exculpatory evidence stemmed from the prosecutor's role in helping to " * * * shape a trial that bears heavily on the defendant." (373 U.S. 83, 88, 10 L. Ed. 2d 215, 219, 83 S. Ct. 1194.) The court thus stressed both the prosecutor's affirmative duty to assure that criminal trials are fair and the harm caused defendants in cases where a prosecutor ignores this obligation.

Our supreme court has provided in Supreme Court Rule 412 (58 Ill. 2d R. 412) that:

"(a) Except as is otherwise provided in these rules as to matters not subject to disclosure and protective orders, the State shall,

upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:

>     (i) the names and last known addresses of persons whom the State intends to call as witnesses, together with their relevant written or recorded statements, memoranda containing substantially verbatim reports of their oral statements, and a list of memoranda reporting or summarizing their oral statements. Upon written motion of defense counsel memoranda reporting or summarizing oral statements shall be examined by the court *in camera* and if found to be substantially verbatim reports of oral statements shall be disclosed to defense counsel:
>
> * * *
>
> (c) Except as is otherwise provided in these rules as to protective orders, the State shall disclose to defense counsel any material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce his punishment therefor."

In *People v. Nichols* (1976), 63 Ill. 2d 443, 349 N.E.2d 40, the court affirmed an appellate court reversal of the defendants' conviction for armed robbery, burglary and attempt rape where the State failed to produce a shoe pursuant to a production order and specific request for the shoe. The court found that the shoe tended to prove that someone else might have committed the offense and that the shoe was favorable to the defendants' alibi defense. The court held that nonproduction of the shoe constituted suppression even though the defendants possessed laboratory reports concerning it and they failed to demand its production as forcefully as they might have. Since the defendants presented alibi defenses and alleged a misidentification by the victims, the suppressed shoe had to be considered evidence favorable to the defendants and should have been disclosed to them.

In the instant case, as in *Nichols,* the defendant presented an alibi defense and alleged that he had been misidentified. The suppressed police report identified Marna Hummel, an eyewitness to the crime whose testimony might have assisted the defense; however, she did not testify at the trial. In addition, defendant stated that he was in Elgin when the robbery occurred and his girlfriend corroborated this story. The fact that Marna Hummel told Officer Van Note that she saw the two robbers in the store on the day before the robbery would also tend to bolster any testimony that Hummel might make in favor of the defense.

Joe Ortega was also identified in the suppressed police report and his affidavit accompanied defendant's motion for a new trial. While

substantial portions of that affidavit were stricken as hearsay, it is evident to this court that Ortega was acquainted with the defendant and that he believed that the defendant did not fit the eyewitnesses' descriptions of the robbers. Had defendant learned of Ortega's existence before or during trial, his favorable testimony might have had considerable impact on the jury.

■■■ In *People v. Parton* (1976), 40 Ill. App. 3d 753, 354 N.E.2d 12, this court emphasized that defendants need to be fully apprised of all discoverable information in order to fully develop their defense strategies. We stated, "it is not the function of an appellate court to speculate to what use a defendant and his counsel may put material evidence withheld them in violation of Rule 412." (40 Ill. App. 3d 753, 758, 354 N.E.2d 12, 16.) Accordingly this court need not make an express determination that the defendant has actually been deprived of a fair trial when requested or favorable information is withheld, because the prosecutor who withheld the information played an important role in charting the course of the trial against the defendant. *Brady; Nichols; Parton.*

For the foregoing reasons, we reverse the judgment of conviction and the sentence imposed thereon, and we remand to the Circuit Court of Livingston County for a new trial.

Reversed and remanded.

TRAPP, P. J., concurs.

Mr. JUSTICE GREEN, specially concurring:

In my partial dissent in *Parton,* I indicated that I thought that in order for the court to rule that a violation of the doctrine of *Brady* and Rule 412(c) has occurred, a showing must be made of a reasonable likelihood that the withheld information could have been used favorably by the accused. I adhere to that view. In the instant case it is readily apparent that information that an eyewitness had stated the robbers were persons who had been in the store on a previous day could have been used favorably by the accused. Accordingly, I concur in the result reached by the majority. To the extent the opinion implies that a showing of likely favorable use is not required for reversal, I am in disagreement with the opinion.