THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROCCO RUFFALO, Defendant-Appellant.

First District (1st Division)   No. 77-1474

Opinion filed March 12, 1979.

534

John M. Goldberg, of Chicago (John M. Cutrone, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Michael E. Shabat, and Margaret K. Stanton, Assistant State's Attorneys, of counsel), for the People.

*Mr. JUSTICE BUCKLEY delivered the opinion of the court:

Defendant, Rocco Ruffalo, appeals from a judgment of conviction entered against him in Cook County Circuit Court on January 20, 1977, for the offenses of attempted burglary and possession of a burglary tool. The sole issue presented on appeal is whether the defendant was denied due process of law because of the failure of the prosecution to provide him with certain evidence. For the reasons stated below, we affirm.

The facts upon which resolution of this appeal depend are the following:

At trial, Daniel Lukensmeyer, a Chicago police officer, testified that while he was off duty on February 12, 1976, he was in a tavern at 3641 South Morgan in Chicago, upstairs with Thomas Guadagno, son of the tavern owner. Sometime after 11 a.m., Guadagno looked out a window and informed Lukensmeyer that someone was trying to break in. Lukensmeyer said he ran downstairs, alerting several other Chicago police officers who were customers of the tavern, and once outside observed the defendant. When Lukensmeyer shouted, "Police, stop," the defendant ran. After a chase, Lukensmeyer was able to apprehend him and found on his person a screwdriver. Lukensmeyer said the rear door of the tavern on the second floor bore pry marks.

Guadagno testified that, while he was upstairs with Lukensmeyer, he heard a scratching sound at the back door. He approached a rear

---

*This opinion was prepared by Justice Buckley while assigned to the Illinois Appellate Court, First District.

window, opened it, looked outside and noticed a man with curly hair and who was wearing a brown jacket and dark pants, prying at the back door lock with a screwdriver. He then told Lukensmeyer what he had seen and went downstairs and outside with him. Once outside he saw the defendant standing by the stairs leading up to the second floor apartment. He testified that the defendant fled when approached and that he identified the accused after the arrest.

Guadagno also said that the back door and lock were intact prior to the incident, but afterward pry marks were visible in the wood around the lock.

Lukensmeyer testified that several days later Guadagno's mother gave him part of a door lock she said she had found after the incident. He said he mentioned this to an assistant State's Attorney, who told him there was no need to inventory the lock part, and afterwards he disposed of it. Upon hearing this testimony the defense entered a motion for a mistrial on the grounds that this physical evidence had been improperly suppressed.

Several photographs taken on the day of the incident were introduced into evidence which were described as showing the back door with pry marks around the rim of the lock.

The defendant testified that he was approaching the tavern, intending to enter it for a drink, when he saw someone jump a fence. He then saw a group of men come out of the taven, and because he was frightened he ran away. He denied trying to enter the upstairs of the tavern and said he was unaware that he had been carrying a screwdriver.

In rebuttal the prosecution introduced a certified copy of the defendant's earlier conviction for burglary.

It is useful to review first the basic facts regarding the prosecution's failure to produce the evidence in question and secondly the principles of law applicable to such a failure to produce.

The evidence in question was a lock cylinder which was given a few days after the charged offense to a police officer, who had been a witness and who had arrested the defendant, by the owner of the subject premises. That police officer told an assistant State's Attorney that the cylinder was from the door at which entry had been attempted. The assistant State's Attorney noted that photos of the door in question had been taken and indicated to the officer that the lock need not be inventoried. The officer subsequently disposed of the cylinder.

The existence of photographs of the door was revealed to the defendant prior to the trial, but no specific request for the lock cylinder was made before trial and no mention of it was made to the defendant. At trial, when testimony revealed that a police officer had for a time been in possession of the lock cylinder, the defense moved for a mistrial.

■■ The right of the defense to be informed of exculpatory evidence found by the prosecution is secured both under the Federal Constitution and by Illinois Supreme Court Rule 412(c) (Ill. Rev. Stat. 1975, ch. 110A, par. 412 (c)). The decisional law interpreting this right generally focuses on the concept of "suppression" by the prosecution of evidence favorable to the accused. However, the mere fact that the existence of certain evidence was known to the prosecution and not to the defense does not in itself constitute suppression.

Failure of the prosecution to make available evidence relates to not one, but two considerations. The first is that touched upon in *People v. DeStephano* (1975), 30 Ill. App. 3d 935, 942, 333 N.E.2d 570, in which it was stated: "It is as much his [the prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." The second consideration was addressed in *Brady v. Maryland* (1963), 373 U. S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, in the words: "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." See *Moore v. Illinois* (1972), 408 U. S. 786, 33 L. Ed. 2d 706, 92 S. Ct. 2562.

The former consideration relates to the integrity of the criminal justice process in that the bad faith of the prosecution in deliberately depriving the defense of desired evidence taints the criminal justice system and therefore constitutes a denial of due process. The latter consideration focuses simply on the fairness of the process, recognizing that the prosecution has in its links to law enforcement agencies, an advantage in the acquisition of evidence, so that even an unintentional, good faith action by the prosecution which deprives the defendant of exculpatory evidence results in unfairness so as to constitute a denial of due process. See *United States v. Bryant* (D.C. Cir. 1971), 439 F.2d 642, 648.

It must be noted, however, that for a denial of due process to be found, the character of the evidence made unavailable must meet a different standard under these different considerations. One verbal formulation of this dual standard is contained in *People v. Payne* (1976), 44 Ill. App. 3d 502, 358 N.E.2d 409:

> "Accordingly this court need not make an express determination that the defendant has actually been deprived of fair trial when *requested or favorable* information is withheld." (Emphasis added). 44 Ill. App. 3d 502, 507.

Thus withholding requested evidence, a bad faith action, constitutes denial of due process simply because evidence was requested and

withheld, without regard to the nature of the evidence. On the other hand the mere fact of noncommunication of evidence constitutes a denial of due process where the evidence is of a character favorable to the defense, notwithstanding the good faith of the prosecution. See *People v. Jones* (1977), 66 Ill. 2d 152, 361 N.E.2d 1104; *People v. Berry* (1977), 54 Ill. App. 3d 647, 651-52, 370 N.E.2d 26.

Another statement of policy regarding bad faith action by the prosecution is contained in *People v. Parton* (1976), 40 Ill. App. 3d 753, 354 N.E.2d 12, in which the action in question was failure by the prosecution to comply with a discovery request. The court quoted *People v. Dixon:*

> "It is not this court's purpose to speculate as to what use the defense could or would have put the specific evidence in question, or what additional evidence it may or may not have led to, had it been turned over prior to trial. The fact remains that this evidence was not available, as it should have been, to the defendant when his defense was being planned and prepared." (19 Ill. App. 3d 683, 688, 312 N.E.2d 390.)

The court then concluded:

> "The error involved in *witholding* evidence from discovery is not dependent on an affirmative showing by the defendant that he was prejudiced in fact." (Emphasis added.) 40 Ill. App. 3d 753, 758.

This statement is somewhat clarified when considered in connection with the qualification observed in *People v. Hoffman* (1965), 32 Ill. 2d 96, 203 N.E.2d 873, that the evidence in question must be material.

Where, however, the failure to communicate evidence to the defense is not a product of bad faith, *United States v. Agurs* (1976), 427 U. S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392, clearly mandates a different standard. In that decision the court pointed out that the prosecution is under a duty to volunteer to the defense exculpatory evidence whose existence is unknown to the defense or not specifically requested. Under the facts of that case, failure to inform the defense that the murder victim had a prior criminal record, the court found that, although such evidence could have contributed to a defense theory of self-defense, that theory was itself unavailing in light of other evidence, so that the evidence not communicated did not constitute exculpatory evidence. The court distinguished *Brady v. Maryland* on the grounds that, in that case, the evidence was withheld in spite of a specific request for production, whereas in *Agurs* no specific request had been made.

■■ ■ The distinction explicitly drawn in *Agurs* is reflected in the other decisions discussed above. The rule they describe may be expressed in this way: Where evidence is withheld from the defense either in spite of a defense request for it or when it is of such a character as to be of obvious

importance to the defense, the prosecution has abused its position so that its conduct amounts to a "suppression" and a denial of due process has occurred; where, however, there has been no defense request for the particular evidence in question and that evidence is not of apparent importance to the defense, there has been no "suppression" and no denial of due process has occurred unless that evidence had demonstrable exculpatory potential. See *United States v. Bryant.*

■ Under the facts of the present case, the lock cylinder of whose existence the defense was never informed was never the subject of a specific defense request for production. While it is true that the defense made a general request for all physical evidence known to the prosecution, it is apparent that the prosecution did not regard the lock cylinder as evidence, having declined to take steps to preserve it. Accordingly, there was no bad faith in the prosecution's failure to list the lock cylinder in its answer to the defense discovery request.

■■ Nor can it be said that the lock cylinder was of obvious importance to the defense. Defense counsel was made aware of the existence of photographs of the door in question, and an examination of these photographs would have demonstrated either the presence or absence of the cylinder of the lock. If that cylinder's importance to the defense had been obvious, defense counsel presumably would have, upon examining these photographs, made inquiries concerning the whereabouts of that item. The record reveals no such action by defense counsel.

As a result, the prosecution's failure to provide this evidence to the defense must be viewed as inadvertent, and such a failure would deny the defendant due process only if the evidence in question had exculpatory potential.

In determining whether the lock cylinder had such potential, the question is not, as the defense protests, whether it would in fact have been exculpatory. Rather, the question is whether it could have been exculpatory in light of other evidence in the case. (*United States v. Agurs.*) As the defense points out, to require proof that the cylinder would in fact have been exculpatory would, in the present case where the evidence in question is unavailable, constitute an absurd demand. To require, however, that the defense demonstrate how that evidence could have been exculpatory under the overall evidence in the case is reasonable, as the defense concedes.

■■ However, the defense has failed to meet such a requirement. The defense points out that tests could have been made on the marks on the lock cylinder to determine whether they could have been made by the screwdriver the defendant was carrying when apprehended. He then argues that those marks could not have been made by that tool. This would tend to prove that the defendant did not try to force the lock. Such

an argument, however, overlooks the fact that the defendant was seen by an eyewitness attempting to force the lock and that the testimony of that witness was not effectively impeached. As a result, even if, as the defense suggested, the lock cylinder were to show signs of having been attacked by a different instrument rather than the screwdriver taken from the defendant when he was arrested, it would have been reasonable for the finder of fact to conclude that the defendant had used another instrument which he had discarded before his capture, and that the defendant was interrupted before the screwdriver in his possession when captured had made any identifiable marks on the lock cylinder, or that that screwdriver was intended for a purpose other than prying on the lock cylinder itself.

In sum, because of the nature of the evidence of the defendant's guilt, there was no way that the missing lock cylinder could have, if produced, created a reasonable doubt of his guilt. Therefore, the inadvertent failure of the prosecution to inform the defense of the existence of this evidence in response to a general request for physical evidence did not constitute a denial of due process. See *People v. Houck* (1977), 50 Ill. App. 3d 274, 288-89, 365 N.E.2d 576.

For this reason, the defendant's conviction for attempted burglary as well as possession of a burglary tool is hereby affirmed.

Affirmed.

McGLOON and O'CONNOR, JJ., concur.