THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CRAIG POST, Defendant-Appellant.

First District (5th Division)   No. 81—710

Opinion filed September 17, 1982.

James J. Doherty, Public Defender, of Chicago (John Lanahan, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David A. Shapiro, and David A. Baitman, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial, defendant was convicted of armed violence and four counts of aggravated battery. He was sentenced to 6 years on the armed violence conviction, to be served concurrently with four concurrent 3-year sentences for each conviction of aggravated battery.

On appeal, defendant contends that (1) he was improperly convicted of armed violence where the felony charged as an element thereof was aggravated battery under section 12—4(b)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(b)(1)); (2) he was denied a fair trial (a) when the prosecutor told a potential witness that he need not appear in court and then commented in closing on his failure to call witnesses and (b) when the State failed to reveal until the eve of the trial that it possessed a knife which might have supported his self-defense theory; (3) the trial court erred when it admitted portions of his oral confession, not revealed in discovery, which negated his theory of self-defense; and (4) the four convictions for aggravated battery should have been merged into one conviction for that offense.

George Raiman, assistant manager of the Biograph theater, testified that on the evening of December 7, 1979, patrons were being searched as they entered the theater; that Akram Farhan, Debra Farhan, Robin Edwards, and Frank Rozhon entered together and

were searched, but no weapons were found; that no search was made of defendant and his companions, Jessie Nava, William Snow, and Mark Reed, when they entered;[1] that he overheard defendant say that he had a knife and wanted to get "the Iranian" who was inside; that he warned Akram Farhan of the threat and advised him to leave; that after Farhan and his three companions left through a side door leading to an alley, defendant and his companions ran out the front door; that when he (Raiman) went out, he saw defendant and Farhan facing each other in the alley with Richard Warner, manager of the theater, between them; that defendant had something in his hand at that time; and that Farhan had nothing in his hands.

Richard Warner, the theater manager, testified that on the evening of December 7, 1979, George Raiman told him of possible trouble with two groups of patrons; that when he went out into the alley and stood between the two groups, defendant pulled a knife and told him to get out of the way; that he then saw a scuffle involving Farhan, defendant, and Nava, during which defendant stabbed Farhan; that neither Farhan nor any of his companions had a knife; that on the morning of December 9, the janitor at the Biograph brought in a knife, stating that he had found it in the alley; that he was in the alley several times between the incident and December 9 but had not seen a knife; and that he did not hear Farhan threaten anyone.

Officer Groth testified that when he arrested defendant and his three companions at the scene, he was informed that the knife used in the incident was still in the alley; and that when he returned to the alley behind the Biograph in the early morning hours of December 8, he found a knife in a large trash bin.

Akram Farhan testified that he was searched when he entered the Biograph on the evening of December 7, 1979; that later, George Raiman spoke to him and advised him to leave; that he and his companions exited through a side door into an alley, where he saw defendant and his companions approaching and heard one of them say "Let's get the Iranian"; that he started to run away, but Nava grabbed him around the neck from behind and he then felt a pain in his back; that he turned and saw defendant behind him with a knife in his hand; that as he fell, defendant grabbed his legs and stabbed him three times in the thigh; that neither he nor any of his companions had a knife that evening; that he was hospitalized for 5 to 6 days; and

---

[1] Apparently because defendant and his companions had done some exterior cleaning for which they were admitted to the theater without charge through a side door.

that he now has scars on his back, on the inside thigh of he left leg, and on the outer thigh of his left leg.

On cross-examination, Farhan testified that he had never met defendant prior to that evening; that he has owned knives but was unarmed on the date of the incident; and that he did not recognize and had never owned the knife found in the alley on December 9.

Assistant State's Attorney James Linn testified that in an interview during the early morning of December 8, 1979, defendant told him that he had stabbed Farhan and had hidden the knife in a large trash bin behind the Biograph. Defendant also told him that Farhan had no knife or other weapon that night. On cross-examination, Linn admitted that the summary he wrote after the interview did not contain any reference to Farhan's being unarmed.

It was stipulated that Farhan sustained three puncture wounds in his left thigh and one puncture would on the left side of his lower middle back.

Officer Groth, when recalled by the defense, testified that when he searched the alley and found the knife in the trash bin early on the morning of December 8, he saw no other knife in the area.

Defendant testified that he was with Snow, Nava, and Reed in the lobby of the Biograph on December 7, 1979; that he knew Snow had fought with Frank Rozhon, one of Farhan's companions, prior to that night; that when Snow ran out of the theater, he was followed by Nava and Reed and, although he (defendant) did not know where they were going or why, he followed them; that they all ran into the alley where he saw Farhan and his group emerging from the theater; that as Farhan started walking toward him, Snow said he (Farhan) had a knife; that Farhan then threatened him (defendant) and he saw a knife in Farhan's hand; that Snow handed him a knife as Farhan approached and, when he attempted to kick the knife out of Farhan's hand, he (defendant) slipped and fell on the ice; that Farhan then lunged at him with the knife and, to protect himself, he stabbed Farhan three times in the leg; that as they scuffled, Farhan dropped his knife and he kicked it away and then threw his own knife in the trash bin; that he did not remember stabbing Farhan in the back, but that it could have happened while they were scuffling; that he had done nothing to provoke Farhan's attack; and that he had told this story to Assistant State's Attorney Linn, including the fact that Farhan had a knife.

OPINION

We first consider the propriety of the armed violence conviction

where the felony charged as an element of that offense was aggravated battery under section 12—4(b)(1) of the Criminal Code of 1961. Ill. Rev. Stat. 1979, ch. 38, par. 12—4(b)(1).

Battery, a misdemeanor, requires proof that the defendant "intentionally or knowingly without legal justification and by any means *** cause[d] bodily harm to an individual ***." (Ill. Rev. Stat. 1979, ch. 38, par. 12—3(a); *People v. Siler* (1980), 85 Ill. App. 3d 304, 406 N.E.2d 891.) Use of a deadly weapon in the commission of a battery enhances the offense to a felony, aggravated battery. (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(b)(1); *People v. Redding* (1976), 43 Ill. App. 3d 1024, 357 N.E.2d 1227.) The elements of armed violence are (1) commission of any felony defined by Illinois law; and (2) while armed with a dangerous weapon. (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2.) In *People v. Van Winkle* (1981), 88 Ill. 2d 220, 430 N.E.2d 987, it was held that use of a dangerous weapon which serves to enhance a charge of battery to aggravated battery may not also serve to further enhance the latter charge to armed violence. Accord, *People v. Haron* (1981), 85 Ill. 2d 261, 422 N.E.2d 627.

It is our view that *Van Winkle* is dispositive of this issue. Defendant here was charged in the indictment with "the offense of armed violence in that he, while armed with a dangerous weapon, to wit: a knife, intentionally and knowingly without legal justification caused bodily harm to Akram Farhan, by stabbing him in the back and thigh with said knife, in violation of Chapter 38, Section 33A—2, 12—4(b)(1) of the Illinois Revised Statutes 1977, as amended ***." The indictment contains the elements required for an armed violence conviction, and the felony element is clearly predicated on section 12—4(b)(1).

The State, however, relying on *People v. Ross* (1981), 100 Ill. App. 3d 1033, 427 N.E.2d 955, contends that the conviction should stand (1) since the defendant was also convicted of aggravated batteries causing great bodily harm, permanent disability, and permanent disfigurement (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(a)), any of which could serve as the felony predicate of armed violence; and (2) because the verdict does not specify which aggravated battery count was relied on in the conviction of armed violence.

In *Ross*, the defendant was convicted of armed violence and two aggravated battery charges, using a deadly weapon and causing great bodily harm, in addition to armed violence. Because the jury failed to specify on which aggravated battery it relied in reaching the armed violence verdict, the court affirmed that conviction. *Ross*, however, is distinguishable in one important respect—the indictment in that case did not specify a particular form of aggravated battery as the under-

lying felony for armed violence. Therefore, the court was able to assume that the jury's verdict was based on aggravated battery causing great bodily harm. In the present case, the indictment clearly specifies aggravated battery using a deadly weapon and is thus analogous to *People v. Van Winkle* (1981), 88 Ill. 2d 220, 221-22, 430 N.E.2d 987, 988, where the court noted:

> "Although it would appear that the aggravated battery charge could have been based on section 12—4(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 12—4(a)), the count of the information charging aggravated battery is based upon section 12—4(b)(1), *and the count charging armed violence makes specific reference to section 12—4(b)(1).*" (Emphasis added.)

While the armed violence charge here could also have been based on section 12—4(a) (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(a)), it was based instead on section 12—4(b)(1).

■ The State further contends that the reference to section 12—4(b)(1) in the armed violence count was unnecessary and, as mere surplusage, need not have been proved and may be disregarded. (*People v. Rothermel* (1982), 88 Ill. 2d 541, 431 N.E.2d 378.) It appears to us, however, that the reference to section 12—4(b)(1) in the indictment is not mere surplusage; instead, it supplies an element of the offense which must be included to comply with section 111—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 111—3), which provides in relevant part:

> "(a) A charge shall be in writing and allege the commission of an offense by:
>
> * * *
>
> (3) Setting forth the nature and elements of the offense charged * * *."

Absent the reference to section 12—4(b)(1), the indictment alleges battery ("caused bodily harm"), a misdemeanor; rather than aggravated battery, a felony. Since one element of armed violence is commission of a felony, the reference to section 12—4(b)(1) cannot be disregarded. This being so, the aggravating factor of being armed has been doubly enhanced, and the conviction and sentence for armed violence must be vacated.

We next consider the contention that defendant was deprived of a fair trial "where the State told a potential defense witness that he need not appear in court and then commented in closing on the defendant's failure to call witnesses." He argues that the absence of Mark Reed from the trial was procured by the State after he had been subpoenaed by defendant and that the failure of Reed to appear

at trial and at the pretrial hearings prejudiced him at both levels.

The pretrial suppression hearings were held on September 16 and 24 and October 10, 1980, at which time Reed, although under subpoena by defendant, failed to appear. Defense counsel then notified Reed by letter that he was to appear for trial. On February 5, 1981, the first day of trial, Reed called the prosecutor and asked whether he had to appear. He was told that he was not required to respond to a letter, but that he should be present in court on Monday, February 9, the date defendant was expected to begin his case. It appears from the comments of defense counsel in his argument on the post-trial motion, that Reed did in fact appear on February 9 but was not called by defendant to testify. Furthermore, we find nothing in the record to indicate that the State had anything to do with the failure of Reed to be present at the pretrial hearings. We thus reject defendant's contention that he was denied a fair trial by reason of any conduct of the State with reference to witness Reed.

We see no merit in the further argument of defendant that he was denied due process by the comments of the State during its rebuttal closing argument that the defense had failed to call Reed or any of the other persons who were with him at the theater to support his self-defense theory. It is improper for the State to comment on the defendant's failure to call specific witnesses where there is no showing that they were unavailable to the State. (*People v. Beller* (1979), 74 Ill. 2d 514, 386 N.E.2d 857.) However, the impropriety is waived where, as here, it is raised for the first time on appeal (*People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739), unless the improper comments are plainly a material factor in defendant's conviction and substantially prejudice his right to a fair trial (*People v. Dukett* (1974), 56 Ill. 2d 432, 308 N.E.2d 590, *cert. denied* (1974), 419 U.S. 965, 42 L. Ed. 2d 180, 95 S. Ct. 226).

In the instant case, we do not view the comments to constitute a material factor in defendant's conviction, as we believe the evidence of an unprovoked attack on Farhan to be overwhelming. Defendant testified that Farhan lunged at him with a knife and, to protect himself, he stabbed Farhan. There was no testimony in support of this self-defense theory; whereas, a number of witnesses—Raiman, Warner, Farhan, Debra Farhan, and Robin Edwards—testified that Farhan had no knife and that defendant's attack was unprovoked. Assistant State's Attorney Linn also testified that defendant told him he had stabbed Farhan, who was unarmed, and had hidden the knife in a large trash bin in the alley, where Officer Groth found it the next morning.

Defendant also contends that he was denied a fair trial because

the State failed to reveal until the day before trial commenced that it possessed a second knife, found at the scene two days later. He argues that the failure of the State to inform him of the second knife in its answer to discovery prejudiced him by preventing an investigation which may have led to evidence supporting his self-defense theory.

Suppression by the prosecution of evidence favorable to and requested by the defendant violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. (*Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194.) Although the *Brady* rule usually involves suppressed information discovered after trial, the late disclosure of such material in the midst of trial may also give rise to a violation of due process. (*In re Hatfield* (1979), 72 Ill. App. 3d 249, 390 N.E.2d 453.) To establish such a violation, the defendant must show (1) that the evidence was favorable to him (*People v. Middleton* (1976), 38 Ill. App. 3d 984, 350 N.E.2d 223); (2) that the prosecutor failed to disclose the evidence in response to a specific request (*People v. Bivins* (1981), 97 Ill. App. 3d 386, 422 N.E.2d 1044); and (3) that the evidence was material (*People v. Hovanec* (1979), 76 Ill. App. 3d 401, 394 N.E.2d 1340). In considering materiality, "the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." *United States v. Agurs* (1976), 427 U.S. 97, 112-13, 49 L. Ed. 2d 342, 355, 96 S. Ct. 2392, 2402.

■ In the case before us, we initially note that there appears to have been no suppression of the second knife. While the record is incomplete as regards discovery, it does indicate that in advance of trial, defendant had received a police report which referred to the second knife. Defense counsel, in his argument on the post-trial motion, admitted receiving such a report in his comment as follows:

> "[T]hough there was a discovery motion filed for tangible evidence early in the case and a renewal of that discovery motion filed, the State did not tender or have in court the second knife, though the report that was tendered by the State to Post did show a cross reference to this particular case as it related to the second knife."

While the report was not made part of the record, from the above statement and other discussions between counsel in the record, it is clear that the report was tendered months before trial but that defendant made no request for the production of the second knife until February 3, 1981—two days before trial commenced. The record

also shows that the knife was in the courtroom on February 6 and was introduced into evidence by the defense. Thus, we see no prejudice to defendant by reason of its late production, particularly in view of the fact that the second knife was found two days after the occurrence by the theater janitor and the arresting officer testified that he searched the scene after the incident and found no second knife; that five witnesses, including Farhan, testified that he was not carrying a knife; and that defendant himself admitted, in his statement to the assistant State's Attorney, that he had stabbed Farhan, who was unarmed.

We next consider whether the trial court erred in admitting portions of defendant's oral confession which were not revealed in discovery. Defendant concedes that parts of his confession were disclosed and thus were admissible; but he contends that the portion of his statement testified to by Assistant State's Attorney Linn, that Farhan was unarmed, contradicted his self-defense theory and, because it was disclosed for the first time at trial, it should not have been admitted.

On appeal, an issue is considered waived when a defendant failed either to make a timely objection at trial (*People v. Ferguson* (1981), 102 Ill. App. 3d 702, 429 N.E.2d 1321) or to raise the issue in a post-trial motion (*People v. Foster* (1979), 76 Ill. 2d 365, 392 N.E.2d 6). In the present case, there was no objection to the testimony concerning defendant's oral confession to Linn which included the admission that Farhan was unarmed, and as the issue was not properly raised in his post-trial motion, we find that the issue has been waived.

■ We are not persuaded that the plain-error exception (Ill. Rev. Stat. 1979, ch. 110A, par. 615(a)) is applicable, since it does not appear from the record that an error affecting substantial rights was committed. (*People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739.) As stated above, the evidence of defendant's guilt is overwhelming. Five other persons, in addition to Linn, gave testimony that Farhan was unarmed when defendant attacked him, with the only contrary testimony being that of defendant. Under such circumstances, it appears to us that the jurors' verdict would not have been otherwise if the statement complained of had not been admitted. See *People v. Ferguson* (1981), 102 Ill. App. 3d 702, 429 N.E.2d 1321.

Finally, we consider whether the defendant's four convictions for aggravated battery should have been merged into a single conviction for that offense. Defendant contends that because the acts involved were identical, directed against a single victim, and occurred in rapid succession, they could give rise to only one aggravated battery

conviction.

The general rules on the merger of offenses are set forth in the often-cited language of *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273:

> "Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts. 'Act,' when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense. We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." (66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45.)

While many decisions dealing with multiple convictions quote this language, the results are far from uniform.

In *People v. Mays* (1980), 81 Ill. App. 3d 1090, 401 N.E.2d 1159, the defendant shot at his victim five times in the space of 30 to 60 seconds, inflicting three wounds. That defendant was convicted of aggravated battery causing great bodily harm, aggravated battery causing permanent disability, and aggravated battery using a deadly weapon. Because the offenses were based on separate acts, pulling the trigger three separate times, and each offense charged required proof of a different element, the court upheld the multiple convictions.

An opposite conclusion was reached in *People v. Davis* (1981), 100 Ill. App. 3d 268, 426 N.E.2d 1047, where defendant was convicted of aggravated battery and attempted murder when he shot twice at his victim, wounding him in the face and arm. The court held that the two shots constituted parts of the same physical act and vacated the aggravated battery conviction as a lesser included offense.

While the cases are not easily distinguishable, consideration in terms of the rules set forth in *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, will aid in determining which of the divergent analyses is applicable to the present case. The first rule in *King* is that prejudice to the defendant results when more than one offense is

carved from the same physical act. "Act" is defined as "any overt or outward manifestation which will support a different offense." (66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45.) The cases are seemingly indistinguishable on this point, since the same acts which were found to be separate acts in *People v. Mays* (1980), 81 Ill. App. 3d 1090, 401 N.E.2d 1159, were found to be part of the same physical act in *People v. Davis* (1981), 100 Ill. App. 3d 268, 426 N.E.2d 1047. Yet, these cases can be harmonized, for the second rule of *King* is that there can be no multiple convictions for *multiple acts* "when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses." (66 Ill. 2d 551, 566, 363 N.E.2d 838, 844.) *Davis* is more properly characterized as falling under this rule, since the two acts of shooting were not, in reality, "one act"; instead, the aggravated battery charge (shooting the victim in the arm and cheek) was a lesser included offense of the attempted murder charge (attempting to kill the victim by shooting him). In *Mays*, on the other hand, the victim was convicted of three counts of aggravated battery, none of which were lesser included offenses. Thus, the third rule in *King* was applicable:

> "Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts." 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844.

Under the foregoing analysis, the present case is analogous to the situation in *Mays*. There were four distinct acts of stabbing, and four distinct offenses were charged, each requiring proof of a different element—aggravated battery using a deadly weapon, aggravated battery causing great bodily harm, aggravated battery causing permanent disability, and aggravated battery causing permanent disfigurement. Since these four offenses arose from a series of closely related acts, and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences were properly entered. *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.

For the reasons stated, we vacate the conviction and sentence for armed violence, but the aggravated battery convictions and sentences thereon are affirmed.

Affirmed in part, vacated in part.

LORENZ and WILSON, JJ., concur.