THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GARY MAX VARGAS, Defendant-Appellant.

Second District   No. 82—68

Opinion filed August 2, 1983.

G. Joseph Weller and Josette Skelnik, both of State Appellate Defender's Office, of Elgin, for appellant.

Robert Morrow, State's Attorney, of Geneva (Phyllis J. Perko and Judith M. Pietrucha, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

After a bench trial before the circuit court of Kane County, the defendant, Gary Max Vargas, was convicted of armed robbery. (Ill.

Rev. Stat. 1981, ch. 38, par. 18—2.) He contends on appeal that the charge should have been dismissed because the State destroyed a tape recording that contained exculpatory information. Alternatively, he urges he should receive a new trial because the State failed to disclose the existence of the exculpatory information that was on the tape. He contends both actions violated the principles of *Brady v. Maryland* (1963), 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196-97. Defendant also raises a question concerning the competency of his trial counsel.

Defendant was charged by indictment with the armed robbery of Evelyn Hammond, a sales clerk at the One-Stop Grocery in Aurora. On August 18, 1981, at the arraignment, defense counsel made an oral motion for preservation of any recordings of conversations regarding the subject case made by the Aurora police department. The court granted the motion and directed the State's Attorney to make the phone calls necessary to ensure that the tapes would be preserved. Ten days later, at a subsequent hearing, the State indicated that it had made the proper phone calls and defense counsel stated he would make an effort to get the tapes within the week. More than two months later, defense counsel made arrangements to obtain the tapes and learned that they had been destroyed by the Aurora police department. He then moved for dismissal of the charge, urging that the defendant was irreparably damaged and, in the absence of the tapes he would be unable to adequately defend himself. The trial court denied defendant's motion to dismiss.

The key witness testifying for the State was Evelyn Hammond. She testified that on the afternoon of July 25, 1981, she was working behind the counter in the One-Stop Grocery and noticed an individual that she recognized as one of the Vargas brothers enter the store. At trial she identified that individual as Gary Vargas, defendant. After everyone in the store had left except some young children, Vargas approached the counter brandishing a knife and in a loud voice demanded money. Hammond told Vargas that she knew who he was, that she knew his mother and that he should leave before he got into trouble. Hammond offered to call Vargas' mother to have her come pick him up. Vargas refused. Vargas then came behind the counter and held the knife one to two inches away from Hammond's body, repeatedly demanding the money. Hammond believed Vargas was under the influence of something.

Hammond locked the cash register and moved down towards the telephone at the other end of the counter. She told Vargas that she had $2 in her pocket that she would give him if he would leave the

store. However, she refused to give him any money from the register and told him that it was not hers to give away. She reached in her back pocket to get the $2 out and Vargas grabbed the money from her hand before she was able to give it to him. Vargas then moved towards the door, tried on some sunglasses, and left the store.

Hammond dialed "911." The police responded and picked up a suspect approximately a block and a half from the grocery store, one to two minutes after the robbery was reported. Officer Michael Perez testified that he searched defendant and found a wood handle folding knife as well as five $1 bills in defendant's front pocket. Perez then took Vargas to the One-Stop store where Hammond identified him as the man who had just robbed her. She also identified the clothing Vargas was wearing. The knife recovered by Perez was identified by Hammond at trial and was admitted into evidence.

On cross-examination Hammond indicated that when she called "911" to report the robbery she told the police that Roger Vargas had just robbed the store and he was heading north on South Lake, that he had on cutoff blue shorts, a white muscle shirt, and was carrying a knife. After Hammond revealed this conversation defense counsel moved for a mistrial, arguing that he had never been informed that the complaining witness had initially identified her assailant as Roger, rather than Gary, Vargas and that he was therefore totally unprepared to present an adequate defense under the circumstances. Defendant's motion was denied.

Officer Robert Theil, a booking officer at the Kane County jail, also testified. He indicated that Vargas was brought to the station and that he processed Vargas and took an inventory of his property. At the time he was brought to the jail Vargas was wearing shorts and a blue sleeveless T-shirt which was identified as a defendant's exhibit. Written on the T-shirt was "Winning isn't everything but loosing [sic] is the pits."

Defendant was found guilty as charged. He filed a post-trial motion, supported by affidavit, contending that the trial court had erred in denying his motion to dismiss due to destruction of the tapes and in denying his motion for a mistrial because it was not until the cross-examination of Hammond that he first learned of her statement that her assailant was Roger Vargas. The assistant State's Attorney, Brad Swearingen, filed an affidavit in which he averred that he had been informed by Hammond prior to trial that when she called the police to report the crime she initially misnamed the offender as Roger rather than defendant, Gary Vargas. The State filed a counteraffidavit indicating that Hammond also stated that there was no question in her

mind that the person she identified in the back of the squad car two minutes after she called the police was the person who had committed the crime.

Defense counsel urged that if he had the information regarding Hammond's identification of Roger Vargas prior to trial he would have prepared defendant's defense differently. The State urged that the evidence established merely a misnomer and that it was not required to furnish the evidence because it was not in a written report. The court noted that it did not believe that the complaining witness' misnomer of the assailant was crucial to defendant's case. It indicated that it did not believe that the destruction of the tapes caused material prejudice to the defendant. It denied the motion. After the sentencing hearing the court imposed a seven-year sentence.

■■ Defendant's first contention on appeal is that the destruction of the tapes, which contained exculpatory evidence, requires that the charge against him be dismissed. At trial defendant brought a motion to dismiss on the grounds that, despite a court order to preserve the tapes, the Aurora police department had destroyed all tapes of communications regarding the subject offense. Defendant contends that this amounted to a violation of the rules set forth in the case of *Brady v. Maryland* (1963), 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196-97, which held that suppression by the prosecution of evidence favorable to and requested by the defense violates due process where the evidence is material either to guilt or to punishment, regardless of the good faith or bad faith of the prosecution.

■ As a corollary to this rule it has been held that there is a duty to preserve evidence favorable to a defendant. (*United States v. Bryant* (D.C. Cir. 1971), 439 F.2d 642; *People v. Moore* (1978), 61 Ill. App. 3d 694, 701, 378 N.E.2d 516, 521.) This duty of the prosecution has been recognized as an outgrowth of the prosecution's links to law enforcement agencies (*People v. Ruffalo* (1979), 69 Ill. App. 3d 532, 536, 388 N.E.2d 114), which gives the prosecution an advantage in obtaining evidence.

■■ ■ Dismissal of the charges as a sanction is not required in every situation in which evidence is destroyed. (*People v. Steptoe* (1976), 35 Ill. App. 3d 1075, 1079, 343 N.E.2d 1, 4.) Courts have inherent authority to dismiss criminal charges where due process has been denied. (*People v. Lawson* (1977), 67 Ill. 2d 449, 456, 367 N.E.2d 1244.) However, after careful consideration of the record on appeal, we conclude that defendant's due process rights were not violated by reason of the State's suppression and nondisclosure of the requested evidence.

■ To show a violation of *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, defendant must show (1) that the evidence was exculpatory and favorable to him; (2) that the prosecution failed to disclose evidence in response to a specific request; and (3) that the evidence was material. *People v. Post* (1982), 109 Ill. App. 3d 482, 489, 440 N.E.2d 631.

The State denies that the destroyed tape contained evidence that was exculpatory. Contrary to this assertion, however, it is fairly clear that the evidence was favorable to defendant. Hammond, the complaining witness, testified that she called the police and identified Roger Vargas as the robber. This reflects directly on her identification of the man who robbed her. Thus, regardless of whether her statement is considered a misnomer or a misidentification, it was exculpatory.

Defendant also met the second requirement set forth above, in that he specifically requested the evidence from the State, and contrary to the court's specific order the State failed to produce it, though as discussed below, a summary of the tape was available.

■ Our review of the record leads us to believe that defendant failed to meet the third requirement, in that the evidence was not shown to be material. The proper standard of materiality requires that the omission of the evidence be evaluated in the context of the entire record, and if there is no reasonable doubt about defendant's guilt regardless of that evidence, there is no justification for a new trial. (*United States v. Agurs* (1976), 427 U.S. 97, 112-13, 49 L. Ed. 2d 342, 354-55, 96 S. Ct. 2392, 2401-02.) Though *Agurs* was a case where the omitted evidence was not specifically requested by the defense, its test for materiality has been applied to cases where specific evidence was requested in discovery. *People v. Post* (1982), 109 Ill. App. 3d 482, 440 N.E.2d 631; *People v. Bruno* (1979), 68 Ill. App. 3d 768, 386 N.E.2d 550.

■ ■ Despite the fact that the State violated the discovery order requiring preservation of the tapes, it appears that there was some compliance with defendant's request. The record reveals that the court file, pursuant to defendant's *subpoena duces tecum*, contained a computer printout summarizing the telephone conversation complainant made from the One-Stop grocery to the Aurora police station. It provided:

> "SUBJECTS NAME IS ROGER VARGAS HES WIPED OUT VERY HIGH N ON LAKE ST HAD A KNIFE IN HIS POSSESSION. [*Sic.*]"

The existence of this summary, which was available to defense coun-

sel, together with the fact that defense counsel was able to bring the conversation out on cross-examination, substantially minimizes any prejudice. Assuming that defendant would play the tape in court, it is likely it would reveal nothing other than what Hammond testified to at trial—that she initially called the defendant Roger. While this mistake is relevant to her identification of defendant, it is not dispositive of all issues raised. In considering whether the prejudice suffered by defendant was so severe as to warrant a new trial or discharge, the question that must be asked is whether the evidence could have been exculpatory in light of the overall evidence presented in the case. *People v. Ruffalo* (1979), 69 Ill. App. 3d 532, 538, 388 N.E.2d 114, 118.

The evidence adduced in the instant case strongly militates against defendant's position. It showed that Hammond had been robbed by a man whose family she was familiar with, the robber was in the store a few minutes and she spoke face to face with him, and after he left the store Hammond called the police and told them her assailant was heading north on Lake Street. The evidence showed that within about two minutes defendant was found a block and a half north of the store with a knife in his pocket and when he was brought back to the store Hammond positively identified him as her assailant. Thus, in light of all this evidence, the fact Hammond called defendant by the name Roger soon after the incident was a discrepancy that the court could easily find to be unimportant. In light of Hammond's subsequent positive identification of defendant at the scene of the crime, and at trial, Hammond's testimony was sufficient to support the conviction. *People v. Clarke* (1971), 50 Ill. 2d 104, 110, 277 N.E.2d 866.

■ Defendant urges that where intentional destruction of favorable material is established, he need not establish that he was prejudiced by the missing evidence. However, this principle applies to intentional withholding or destruction of evidence. (*People v. Ruffalo* (1979), 69 Ill. App. 3d 532, 537, 388 N.E.2d 114; *People .v. Dixon* (1974), 19 Ill. App. 3d 683, 688, 312 N.E.2d 390; *People v. Parton* (1976), 40 Ill. App. 3d 753, 354 N.E.2d 12.) In the instant case it is possible that the evidence was destroyed inadvertently rather than in bad faith or intentionally. Defense counsel waited more than two months between the time when the evidence was ordered to be preserved and the time when he checked on obtaining copies of the tapes. Although this delay is no excuse for the destruction of the tapes, it does show a lack of diligence that may have contributed to their destruction. If defense counsel had sought the tapes earlier, as he said he would, they may have been available at that time.

Because there is no reasonable doubt about defendant's guilt,

whether or not the additional evidence is considered, there is no justification for a new trial. (*United States v. Agurs* (1976), 427 U.S. 97, 113, 49 L. Ed. 2d 342, 355, 96 S. Ct. 2392, 2402.) Considering the evidence as a whole, there was ample evidence for the trial court to be convinced of defendant's guilt beyond a reasonable doubt.

Defendant also contends as a separate issue that the State's failure to advise him of the contents of the tape entitles him to a new trial. He contends that because he specifically requested that the communication tapes made by the Aurora police department be preserved for use in his defense and because the information on those tapes was not disclosed to defendant until it came out on the cross-examination of witness Hammond, the dictates of *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, were not complied with. This contention is closely linked with the issue of the destruction of the tapes.

The record shows defendant requested that the tapes be preserved for use at trial and the State was aware of the contents of the tape prior to trial. Relying on *United States v. Agurs* (1976), 427 U.S. 97, 106, 49 L. Ed. 2d 342, 351, 96 S. Ct. 2392, 2399, defendant urges that "[w]hen the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." However, unlike the situation contemplated by the court in *Agurs*, in the case at bar the State did make a response to defendant's request. As previously mentioned the court file contained a computer printout which summarized complainant's call to the police. Apparently defense counsel was unaware that this information was in the court file. Defendant contends that the State had a duty to make this information known to him. However, it is also true that defense counsel should have been cognizant of the court file contents, especially where the computer printout was specifically requested by the defendant during discovery.

Defendant contends that if he had knowledge of the contents of the tape prior to trial it would have dramatically altered his trial strategy. However, even if it is assumed that defense counsel was taken by surprise, the standard to be applied in determining whether the delay in disclosure violated due process is whether the delay prevented defendant from receiving a fair trial. In the event disclosure of the evidence is made before it is too late for defendant to make use of any benefits of the evidence, it has been held that due process is satisfied. *United States v. Allain* (7th Cir. 1982), 671 F.2d 248, 255; *United States v. Ziperstein* (7th Cir. 1979), 601 F.2d 281, 291, *cert. denied* (1980), 444 U.S. 1031, 62 L. Ed. 2d 667, 100 S. Ct. 701.

Defense counsel in the instant case made thorough use of the Hammond phone conversation at trial. Therefore, even if the prosecutor failed in its duty of disclosing that evidence, defendant did not suffer and his due process rights were not violated.

■■ In connection with defense counsel's apparent failure to make use of the computer printout in the court file, defendant raises the contention that he was denied the effective assistance of counsel. Specifically, he urges that the failure of his counsel to adequately prepare and discover the evidence favorable to defense constitutes ineffective assistance. (*People v. Stepheny* (1970), 46 Ill. 2d 153, 263 N.E.2d 83.) However, in light of our determination that defendant received a fair trial when all the evidence is considered, the substantial prejudice requirement of *People v. Stepheny* (1970), 46 Ill. 2d 153, 157, 263 N.E.2d 83, has not been met.

We have evaluated the prejudice suffered by reason of certain evidence being partially omitted from defendant's trial and determined that within the context of the entire record defendant received a fair trial and there is no reasonable doubt concerning his guilt. (*United States v. Agurs* (1976), 427 U.S. 97, 112-13, 49 L. Ed. 2d 342, 354-55, 96 S. Ct. 2392, 2401-02.) Nonetheless we are compelled to comment on the propriety of the prosecutor's failure to comply with the spirit, if not the letter, of *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, and its progeny. It must be recognized that society wins not only when the guilty are convicted but when the accused receives a fair trial. As Justice Douglas opined in *Brady v. Maryland*:

> "A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice, even though, as in the present case, his action is not 'the result of guile,' to use the words of the Court of Appeals. 226 Md, at 427." 373 U.S. 83, 87-88, 10 L. Ed. 2d 215, 219, 83 S. Ct. 1194, 1197.

Were it not for the overwhelming evidence of defendant's guilt in this case, we would be compelled to reverse. Accordingly, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

LINDBERG and NASH, JJ., concur.