THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDDIE SMITH, Defendant-Appellant.

First District (2nd Division)   No. 62702

Opinion filed November 30, 1976.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder, and Neil H. Cohen, Assistant State's Attorneys, of counsel), for the People.

James Geis and Rebecca Davidson, both of State Appellate Defender's Office, of Chicago, for appellant.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Defendant, Eddie Smith, was charged by indictment with the offenses of murder and arson in violation of sections 9—1 and 20—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, pars. 9—1 and 20—1). The charges were brought in connection with a fire that erupted shortly before 1 a.m. on June 30, 1974 in a second floor apartment located at 1509

South St. Louis Street in Chicago, Illinois, and which resulted in damage to the building and the death of a tenant, Rose McCloud. Upon a jury trial defendant was found to be guilty as charged, judgment was entered on the verdicts, and defendant was sentenced to the Department of Corrections to serve concurrent terms of 75-150 years and 6-18 years.

From the entry of the judgment of conviction defendant appeals and presents two issues for consideration: (1) whether the evidence adduced at trial was sufficient to establish defendant's guilt beyond a reasonable doubt and (2) whether the court erred in entering judgment of conviction and sentence for both arson and murder.

A review of the evidence indicates that prior to June 30, 1974, defendant shared living quarters with the deceased, Rose McCloud, and rented a second-floor rear apartment of a three-story building owned by John Daly located at the aforementioned address. The apartment was also occupied by her two children, Diane McCloud and Henry Turner, two grandchildren and her daughter's boyfriend, Larry Henry.

Diane McCloud testified that prior to the date of the fire defendant frequently had threatened all the occupants of the apartment with eviction should they fail to contribute their *pro rata* shares of the monthly rent payment and that such intimidation would often take the form of threats to "burn the place down." In particular, on the day preceding the fire defendant had engaged in several such arguments and on five separate occasions had threatened to set the apartment aflame.

Henry Turner, the victim's son, indicated that on the afternoon preceding the fire defendant had engaged in an argument over the rent with Turner's sister; had threatened to "burn the [expletive deleted] down" if payment was not forthcoming; that he pushed Rose McCloud down on their bed; and had told her that he would cut her throat after she entered the argument on her daughter's behalf.

That evening defendant procured an empty gasoline can from the apartment, departed, and subsequently returned with a full container of gasoline at approximately 9 p.m. Defendant deposited the can in the kitchen and within the hour retired to the rear bedroom, next to the kitchen, which he shared with the deceased. Thereafter, according to Diane McCloud, the sound of a scuffle emanated from that bedroom. Upon investigation McCloud observed her mother's hand at defendant's shirt collar and defendant clasping it. McCloud subsequently departed the building at 12:15 a.m. leaving defendant and the deceased alone in the apartment when the fire erupted.

Defendant appeared in his own behalf and admitted having brought the gasoline can and its contents to the kitchen on the night of the fire but denied having used it to start the fire, suggesting instead that he had procured the gasoline for a friend's automobile. Defendant testified that

some time after retiring on a couch that was kept in the bedroom, he awakened to find himself coughing, gagging, and "seeing red." Defendant failed to arouse Rose McCloud, although she lay asleep in their bed a few feet away. Defendant put on his shoes, fled through the kitchen and down the back stairs. During this time, defendant indicated, his clothing momentarily caught fire and his hair was singed. Defendant testified that he unsuccessfully attempted to return to the bedroom in order to rescue Rose McCloud; that he spoke to firemen in this regard; and that he then walked to a friend's home. Later that night, upon learning of McCloud's death and the police search for him in connection with the fire, defendant surrendered to police authorities. Arresting officers had occasion to observe that defendant's hair was singed, that he smelled strongly of gasoline and that burn spots were visible on his trousers.

Diane McCloud and Henry Turner denied having seen defendant on the scene at the time of the fire. Defendant's neighbor, Debra Gross, testified that on the night of the fire between 12:15 and 12:45 a.m. she observed defendant drinking on a park bench near the building. On cross-examination, Miss Gross indicated that the time period during which she observed defendant was 11:45 p.m. to 12:15 a.m. She later observed defendant in the vicinity of his apartment and subsequently saw him descend the back stairs of the building, enter the alley and walk away at a rapid pace. At this time she looked back at defendant's apartment to discover the porch ablaze and flames emanating from the back of the building. She reported the fire and the fire department responded to a 12:50 a.m. alarm.

Valerie Smith, a defense witness, testified that she observed defendant standing in the alley near a telephone pole speaking to an acquaintance for approximately five minutes after the fire had begun. She indicated that she did not observe defendant speak to firemen or attempt to enter the apartment.

The origin of the fire was the subject of investigation by police and fire department arson units. The fire appeared to have been most severe in the vicinity of the kitchen and rear bedroom where a partially filled gasoline container was recovered. Officers who arrived on the scene immediately after the flames had been extinguished detected an odor of gasoline.

The State introduced the testimony of Officer John Bickler, an investigator employed by the Bomb and Arson Unit of the Chicago Police Department. Officer Bickler personally observed the scene of the fire and analyzed photographs taken thereof. His study led him to conclude that the fire had been started through the ignition of a flammable liquid or "accelerant" which had been spread over the kitchen floor near the exit to the rear porch. Officer Bickler also indicated that finger-like projections of the accelerant were to be observed radiating from the point of the initial

impact of the accelerant. At this impact point the deepest charring or "alligator burning" was found to occur. Residue from one such projection was observed to extend to an area within 3½ feet from the bedroom in which Rose McCloud died. Officer Bickler also testified that he had observed small holes in defendant's trousers which had been noticed at the time of his arrest shortly after the fire. Officer Bickler classified the holes as "splashburn holes" of a type caused by fire.

Defendant also presented the testimony of an expert, Dr. William Staats, a consulting engineer. Dr. Staats testified that he was unable to determine from examination of the photographs of the scene whether an accelerant had been used to ignite the fire. Dr. Staats had never personally observed the apartment. However, notwithstanding the inconclusive nature of the photographs, Dr. Staats testified that in his opinion the fire did not enter the kitchen through the rear doorway.

Officer Albert Alvarez, an investigator employed by the Chicago Fire Department, also testified that he visited the scene of the fire immediately after the flames had been extinguished. During the course of the investigation Officer Alvarez discovered a gasoline can near the refrigerator in the kitchen. There was deep burning of the floor in the vicinity of the can, and in the opinion of Officer Alvarez the fire originated in the kitchen and spread out toward the back porch.

Defendant initially contends that the evidence was entirely circumstantial and insufficient to establish that the fire which caused Rose McCloud's death was the result of arson and that defendant's conduct was culpable. Appellant's counsel characterizes defendant as a mere victim of cruel circumstance and unfortunate logistics whose only crime was that he "threatened a catastrophe which improvidently came true."

■■ We conclude that the evidence adduced at trial was sufficient to establish that the fire was ignited by a deliberate human agency and that defendant was the perpetrator of the arson which led to Rose McCloud's death. In assessing this evidence we recognize that "[d]irect and positive evidence is unnecessary to prove the *corpus delicti* * * *." (*People v. Lueder* (1954), 3 Ill. 2d 487, 488, 121 N.E.2d 743.) The opportunity for commission of an arson, the motive inducing an arson, and the identity of a person accused of arson may all be established through circumstantial evidence. (*Commerce Union Bank v. Midland National Insurance Co.* (1964), 53 Ill. App. 2d 229, 202 N.E.2d 688.) Indeed, the crime of arson is, by its very nature, secretive and usually incapable of direct proof. *People v. Johnson* (1972), 3 Ill. App. 3d 492, 279 N.E.2d 171 (abstract).

■■ The evidence in the case at bar indicated that post-fire investigation of the scene revealed the discovery of a partially filled canister which contained a hydrocarbon compound similar to gasoline. The container was discovered in the vicinity of the apartment where the

fire had been most intense. Observers on the scene detected the odor of gasoline. Testimony of a trained investigator included a discussion of "alligator burning" indicating that the floor of the kitchen had been impregnated with a flammable substance. To suggest that in light of such evidence the fire was of unknown and even accidental origin is to engage in gross speculation. The contrary conclusion, that the fire was intentionally caused by human agency, is amply supported by the record. *People v. Johnson.*

■■ Similarly, the evidence adequately served to establish defendant's motive, opportunity and identity as the perpetrator of the arson with the intent thereby to murder Rose McCloud. Defendant admitted that he brought the aforementioned gasoline can and its contents to the apartment on the night of the fire. Officers effecting defendant's arrest thereafter detected the odor of gasoline about his person. His trousers bore numerous "splash-burn" holes of a type caused by fire.

■■ We also note the frequent prior threats which are highly relevant in cases of this nature. (*People v. Johnson.*) Evidence tending to establish defendant's presence on the premises immediately before the fire, his numerous threats to burn the apartment, the threat to kill Rose McCloud on the day before the fire, his previous violent encounter with McCloud, his failure to arouse her upon his alleged discovery of the fire, and his flight from the scene thereafter provide adequate textual support for the jury's conclusion that defendant possessed the requisite intent to murder Rose McCloud and that defendant personally carried out his threats.

■■ The jury was fully advised regarding the nature of circumstantial evidence and that defendant should not be found guilty unless the facts and circumstances proved at trial excluded every reasonable theory of innocence. (IPI Criminal No. 3.02.) The evidence presented by the prosecution is not improbable, unconvincing or contrary to human experience. The State's case, in view of all the evidence, has few inconsistencies and none amounting to a reasonable doubt of defendant's guilt.

■■ Defendant also contends that the judgment and sentence imposed for the offense of arson must be vacated because both offenses of which he stands convicted result from the same conduct. We disagree.

It is well established in Illinois that a defendant may not be sentenced for more than one offense where multiple offenses result from the same conduct unless such offenses are characterized as "independently motivated or otherwise separable." (*People v. Watson* (1975), 31 Ill. App. 3d 774, 777, 335 N.E.2d 20.) "Conduct" is defined as "an act or series of acts, and the accompanying mental state." (Ill. Rev. Stat. 1973, ch. 38, par. 2—4.) Within this context, defendant's motive is also a significant factor.

*People v. Stewart* (1970), 45 Ill. 2d 310, 259 N.E.2d 24; *People v. Siglar* (1974), 18 Ill. App. 3d 381, 309 N.E.2d 710.

In the instant case it is conceded that the same act formed the basis for both the murder and the arson indictments. However, in completing the single act defendant accomplished a dual purpose. Defendant set fire to the building in revenge, as previously threatened, upon those who shared it with him but failed to adequately contribute toward its keep. The victim of this act was the owner of the building, John Daly. Yet, by figuratively tossing a single match defendant also carried out his threat to murder Rose McCloud.

Defendant's single act was prompted by dual and independent motivations resulting in separate injury to two distinct victims. Therefore, in this case, the offenses of murder and arson are separate offenses upon which defendant may be properly convicted and sentenced. (*People v. Butler* (1976), 64 Ill. 2d 485, 356 N.E.2d 330.) A review of the facts of *People v. Sanford* (1975), 25 Ill. App. 3d 763, 324 N.E.2d 12 (abstract), and *People v. Barto* (1975), 27 Ill. App. 3d 853, 327 N.E.2d 469, *rev'd on other grounds*, 63 Ill. 2d 17, 344 N.E.2d 433, relied upon by defendant, do not mandate a contrary conclusion. In such cases the arson and murder charges of which the defendants were convicted were coincidental and not independently motivated.

For the aforementioned reasons the judgment of the circuit court and the sentences imposed thereon are hereby affirmed.

Judgment affirmed.

DOWNING and JIGANTI, JJ., concur.