THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
SHIRLEY HANES, Defendant-Appellant.

Third District    No. 3—89—0243

Opinion filed August 22, 1990.

Kenneth D. Brown, of State Appellate Defender's Office, of Ottawa, for appellant.

Marshall E. Douglas, State's Attorney, of Rock Island (Judith Z. Kelly and John X. Breslin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

A jury convicted the defendant, Shirley Hanes, of residential burglary, aggravated arson, and arson (Ill. Rev. Stat. 1987, ch. 38, pars. 19—3, 20—1.1, 20—1(a)). The trial court vacated the aggravated arson conviction and thereafter sentenced the defendant to concurrent terms of 10 years' imprisonment for residential burglary and seven years' imprisonment for arson. The defendant appeals.

The record reveals that on January 7, 1988, fire destroyed an apartment occupied by Linda Williams and her daughter. Williams testified that she had lived with the defendant for six years, until she asked him to leave in December of 1986. She stated that one week prior to the fire, she saw the defendant standing in the alley behind her apartment building. When she told him she did not want to talk to him, he replied that he was "going to get even with [her]."

Williams further testified that on the night of the fire, she had left her apartment about 8:30 p.m. to look for her dog. She recalled that when she left her apartment, her clock radio and a lamp were on the nightstand next to her bed. Her television, which had a cable wire connected to the back of it, but which was not yet connected to the cable outlet in the wall, was also in the bedroom. She further recalled that in the kitchen she had left a cake in a pan on top of the stove.

Williams stated that when she returned to her apartment at approximately 10 p.m., she saw firemen coming out of the building. When she was allowed to return to the apartment, she initially noticed that someone had taken his or her fingers and dug a piece of cake out of the pan she left on the stove. She also noticed that the casing around her television was melted and her bedroom furniture was destroyed.

She stated that when she went back outside to talk to the police, she saw the defendant walking across the street. One of the police officers then ran across the street to speak with him. When the officer returned, he showed her a clock radio the defendant had been carry-

ing. Williams testified that from a cigarette burn on top of the radio she recognized it as the one she had on her nightstand. She explained that the defendant had made the burn mark when he accidentally laid a cigarette on top of the radio. She subsequently identified a cable cord the defendant was carrying as a piece of the cable cord from her television.

Williams further noted that the defendant had suffered a stroke two years earlier and that he had a drinking problem. Moreover, she stated that when she told the defendant to move out, he attempted to reestablish the relationship because he wanted someone to take care of him.

Rock Island police officer Steven Harder testified that he was talking to Williams outside the apartment building when she saw the defendant across the street. Based upon his conversation with Williams, he stopped the defendant for questioning. After searching the defendant, he discovered a clock radio in the defendant's coat pocket, which Williams identified as the radio she had on her nightstand. The defendant was then taken to the police station for further questioning and was subsequently placed under arrest.

Harder testified that when he inventoried the defendant's property at the police station, he discovered in his coat pocket a two-foot coaxial cable wire which appeared to have been cut. Harder further stated that when the defendant was being booked he stated, "I fucked up again and I'm going to go to jail for a long time this time."

Expert testimony was presented which showed that the wire found in the defendant's pocket was a physical match to the cut wire from Williams' television and that the two pieces were at one time a single wire.

Police officer Charles Hauman testified that the day after the fire he found at the foot of the bed an object which had burned into the carpet and melted. He believed the object was a lamp.

Investigator Daniel Deardorf of the Rock Island fire department testified that the fire had burned in an inverted pyramid. He traced its origin to the foot of Williams' bed, where he found an object melted into the carpeting. In his opinion, the fire started when the object was placed against combustible material at the foot of the bed. He noted that Williams had told him the bed had a bed covering and sheets on it. Deardorf explained that a light bulb could ignite such material within 15 to 20 minutes.

He further testified that he believed the fire was not accidental, but that someone had placed the object at the foot of the bed. Based upon Williams' statement that her bedroom lamp was missing, he be-

lieved that the melted object was the lamp. No other sources of ignition were found.

Daniel Patterson, a friend of the defendant, testified that he saw the drunken defendant at approximately 7:30 p.m. on the night of the fire. The defendant attempted to sell him a clock radio. Patterson testified that the defendant also told him "it's burning up," though Patterson did not know what the defendant meant.

The State then rested its case. The defendant presented no evidence.

Although no contemporaneous record was made, it appears that during its deliberations the jury sent a note to the trial court stating: "We the 12 jurors cannot make a decision. None of us believe the origin of the fire was a lamp, but some type of motor. We do believe it was the source of the fire." The court notified counsel for both sides about the note, and all of the parties concurred that the jury should be instructed that its decision was to be based on the evidence presented. The jury subsequently found the defendant guilty of arson, aggravated arson, and residential burglary.

The defendant thereafter filed a post-trial motion alleging among other things that his conviction for arson should be vacated because the jury's finding that the fire was caused by a motor and not a lamp was in essence a rejection of the State's theory of the case, *i.e.*, that the fire was caused by a lamp. He contended that instead of instructing the jury to continue its deliberations and make a decision based upon the evidence presented, the trial court should have entered a judgment of acquittal.

The court denied the defendant's motion, finding that there was sufficient evidence to support the jury's verdict. It did, however, vacate his conviction for aggravated arson, finding that the evidence presented was insufficient to show that the defendant was aware the building was occupied when he started the fire.

On appeal, the defendant argues that his conviction for arson should be reversed because in finding that the cause of the fire was a motor and not a lamp, the jury was rejecting the State's theory of the case and therefore the evidence presented was insufficient to sustain a conviction.

■■ To prove arson, the State must show that the defendant, by means of fire, knowingly damaged the property of another. (Ill. Rev. Stat. 1987, ch. 38, par. 20—1(a).) These elements may be shown by circumstantial evidence. *People v. Dukes* (1986), 146 Ill. App. 3d 790, 497 N.E.2d 351.

■ A reviewing court may not substitute its judgment for that of

the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses. (*People v. Kline* (1982), 92 Ill. 2d 490, 442 N.E.2d 154.) Further, once the defendant has been convicted, the evidence is viewed by the appellate court in the light most favorable to the prosecution, and the issue is whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

■ Viewing the evidence in the light most favorable to the prosecution, the record shows that the origin of the fire was an object placed at the foot of Williams' bed near some type of combustible material, presumably the bed covering. Based upon Williams' testimony that her bedroom lamp was missing, the fire department investigator believed the melted object found at the foot of the bed was the lamp. The jury concluded, however, that the object was not a lamp, but rather a motor and that it was the source of the fire.

The State was not required to prove the nature of the object used to set the fire. Further, just because the jury found that the fire was caused by a motor rather than a lamp does not mean it rejected the evidence presented by the State. To the contrary, the jury accepted the evidence and concluded that the defendant had intentionally set the fire. Based upon our review of the evidence, we find that regardless of whether the object was a lamp or a motor, a rational trier of fact could have found the defendant guilty of arson beyond a reasonable doubt. Accordingly, we find no merit in the defendant's contention that the trial court acted improperly in instructing the jury to continue its deliberations. Besides the fact that defense counsel agreed to the instruction, we find the instruction proper and neutral.

The defendant also argues that the trial court erred in failing to *sua sponte* instruct the jury on the lesser included offense of criminal trespass to a residence.

The record shows that at the jury instruction conference defense counsel tendered an instruction on criminal trespass to land, contending that it was a lesser included offense of residential burglary. The trial court refused to tender the instruction, finding that it was not a lesser included offense of residential burglary. The defendant offered no further instructions. On appeal, the defendant acknowledges that criminal trespass to land is not a lesser included offense of residential burglary, but argues that since criminal trespass to a residence is a lesser included offense, the trial judge should have instructed the jury on that offense.

■ Initially, we note that the burden of preparing jury instructions is on the parties, not the trial court; and, generally, the court is

under no obligation either to give instructions not requested by counsel or to rewrite instructions tendered by counsel. (*People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.) Moreover, a party may not raise on appeal the failure to give an instruction unless he has tendered the instruction. (*People v. Underwood* (1978), 72 Ill. 2d 124, 378 N.E.2d 513.) A defendant must also include alleged errors in the jury instructions in his post-trial motion or those alleged errors are deemed waived. *People v. Huckstead* (1982), 91 Ill. 2d 536, 440 N.E.2d 1248.

■ In the instant case, the defendant did not tender an instruction on criminal trespass to a residence and further failed to allege any error regarding the instructions in his post-trial motion. Therefore, we find that he waived any alleged error regarding the jury instructions.

The defendant nonetheless argues that we should consider as plain error the trial court's failure to instruct the jury on this lesser included offense. We do not agree. The plain error exception to the waiver rule is restricted to the correction of grave errors or to situations where the case is close factually and fundamental fairness requires that the jury be properly instructed. (*People v. Huckstead* (1982), 91 Ill. 2d 536, 440 N.E.2d 1248.) We are unable to find that the instant case involves a grave error, that it was factually close, or that the jury instructions as given were fundamentally unfair to the defendant.

Lastly, we note that the defendant argues in a footnote to his brief that if this court finds that the trial court was not required to instruct the jury on the lesser offense, then we should also find that defense counsel's failure to tender such an instruction constituted ineffective assistance of counsel. Instead, we find that the defendant has failed to properly present this issue, and we therefore will not consider it. See *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 468 N.E.2d 1162.

The judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

HEIPLE, P.J., and SCOTT, J., concur.