THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
NANCY JEAN SMITH, Defendant-Appellant.

Second District   No. 2—91—1427

Opinion filed December 6, 1993.

444

BOWMAN, J., dissenting.

Robert Steven Wilson, of Sycamore, for appellant.

Dennis Schumacher, State's Attorney, of Oregon (William L. Browers and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

The defendant, Nancy Jean Smith, was convicted of one count of arson (Ill. Rev. Stat. 1989, ch. 38, par. 20—1(a) (now 720 ILCS 5/20—1(a) (West 1992))), following a jury trial in the circuit court of Ogle County. She was sentenced to three years in prison for the Class 2 felony. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(5) (now codified, as amended, at 730 ILCS 5/5—8—1(5) (West 1992)).) The defendant claims on appeal that: (1) the State did not prove its case beyond a reasonable doubt; (2) the testimony of the State's arson expert should have been stricken or a mistrial granted because of the testimony; (3) the testimony of a witness who allegedly was coached during trial by a spectator should have been stricken or a mistrial granted; and (4) a mistrial should have been granted when the trial court became aware that the State's expert had allowed the destruction of allegedly exculpatory or impeaching evidence. For the following reasons, we affirm.

On March 17, 1990, fire broke out at the Kopy Kat Restaurant in Oregon, Illinois, some time shortly after the restaurant closed for the evening. The defendant, a waitress at the establishment, was charged on June 5, 1990, with one count of arson.

At trial, several of the defendant's co-workers at the Kopy Kat testified for the State that defendant had been at the restaurant at closing time, 11 p.m. Terry Duncan, the arson investigator for the firm that insured the Kopy Kat, testified that he interviewed the defendant shortly after the fire and was told by her that she was the last person to leave the restaurant the night of the fire. The defendant did not testify.

Aimee Manis, a co-worker of the defendant, testified that she left the restaurant between 11:05 and 11:15 p.m. and walked about a

block away. She then looked back toward the restaurant and noticed that "the only light that was on in there was by the cooking area and Nancy Smith (the defendant) was in there." Manis said that defendant's car was parked in front of the restaurant. Manis said she then made a telephone call to her boyfriend from a nearby phone booth that lasted four minutes. Another witness testified that the call was made at 11:10 p.m.

After making the call, Manis said she then walked back in front of the restaurant and this time the restaurant was completely dark. She looked through the restaurant's large picture windows from two to three feet away and saw no one inside. She did not see or smell any smoke at that time, nor did she hear any noises from inside the restaurant. She said defendant's car was still parked in front of the restaurant. Manis said she then continued to walk past the restaurant and stopped at the end of the block for a traffic light. At that time, just moments after walking past the restaurant, the defendant pulled up in her car and stopped at the traffic light. Manis said that despite having a green light at the intersection, the defendant stopped her car, had the interior light turned on and "was messing with something" in or between the car's front seats. Manis was not sure what the defendant was doing and saw nothing else in the car. Manis said the defendant then drove away.

The chief of police of Oregon, Thomas Miller, testified that at 11:25 p.m. he noticed "a white, foggish-type material" that turned out to be smoke near the Kopy Kat. The fire department was immediately summoned and arrived about five minutes later. The restaurant was well engulfed in flames at that time.

Duncan, who was qualified by the trial court as an arson expert, testified for the State that, in his opinion, the fire was incendiary (started by a human) and did not start accidentally. Duncan believed that the fire started on the kitchen floor and that an accelerant (some type of fuel) was poured onto the floor. Duncan based his conclusions on having discovered deep charring patterns, or "alligatoring," on the floor of the kitchen and his belief that only a deliberately set fire could have erupted so quickly from the time the last employees left the restaurant and the "fast, hot fire" was detected. No trace of accelerant was detected by laboratory tests. Duncan testified that he conducted a thorough investigation of the fire scene and eliminated all other possible causes and sources of the fire.

At the close of the State's case, the defendant moved for a directed verdict, which was denied by the trial court. The defendant, in her case in chief, produced two arson experts, the first of whom di-

rectly refuted the State's expert. John Campbell testified that, based on an examination of the restaurant after the fire and laboratory tests, the fire was not the result of arson but had started accidentally. He testified that the fire started slowly between 9 and 10 on the night in question in a concealed space above the kitchen ceiling. Campbell said the fire began when wooden support struts near a recently installed furnace caught fire because they had been improperly installed too close to a furnace vent pipe in the kitchen.

One of the State's witnesses, Mary Jergens, testified that she smelled something burning at about 9:30 the evening of the fire and mentioned it to others at the restaurant. The others testified that they did not smell anything burning. The defendant's second arson expert testified that he found several electrical code violations at the restaurant.

The jury returned a verdict of guilty. The defendant was sentenced to three years in prison. Her motions for a new trial and judgment notwithstanding the verdict were both denied following a hearing.

The defendant first argues that the State failed to prove her guilty beyond a reasonable doubt. In an arson prosecution, the State must prove that the defendant damaged the property of another by means of fire. (Ill. Rev. Stat. 1989, ch. 38, par. 20—1 (now 720 ILCS 5/20—1 (West 1992)).) A criminal conviction will be affirmed if " '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) (*People v. Collins* (1985), 106 Ill. 2d 237, 261, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) The court in *Collins* also noted that " '[o]nce a defendant has been found guilty of the crime charged, the factfinder's [*sic*] role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.' " (Emphasis in original.) (*Collins*, 106 Ill. 2d at 261, quoting *Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789.) Given these principles, the conviction in the present matter must be affirmed.

It was uncontested that the Kopy Kat Restaurant was damaged by fire and that the restaurant was not the defendant's property. The only issues were whether the fire was accidentally or intentionally started and, if intentionally set, whether defendant was the person who started it. The case became a battle of experts.

The State's expert, Terry Duncan, detailed how he traced the source of the fire by looking for certain "pointers," such as burn and

char patterns. He considered all possible causes and starting points for the fire and concluded that it started on the kitchen floor when an accelerant was poured onto it and ignited. Defendant's primary arson expert, John Campbell, also undertook a thorough investigation of the fire scene and conducted tests. He was convinced the fire started accidentally and could not have started in the manner that Duncan believed. In short, the two experts, examining roughly the same information, arrived at opposite conclusions. The jury chose to believe the State's version. Viewing the evidence in the light most favorable to the State, any rational trier of fact could conclude that the fire was intentionally set.

■ The jury could also rationally conclude that defendant was the person who started the fire. The State's only evidence on this point was circumstantial: defendant was seen at the restaurant shortly before the fire began. However, the elements of the crime of arson may be shown by circumstantial evidence. *People v. Hanes* (1990), 204 Ill. App. 3d 35, 38.

The State produced ample evidence that persons other than defendant were at the restaurant shortly before closing, but it was *un*controverted the defendant was the *last person* in the restaurant that night. She was there within 10 to 15 minutes of the time the fire was discovered. While the jury might have concluded that someone other than defendant started the fire, it was not an irrational conclusion that defendant had started the fire. We note that, in criminal cases based on circumstantial evidence, it is no longer necessary for the trier of fact to exclude every reasonable hypothesis of innocence before finding a defendant guilty. (*People v. Pintos* (1989), 133 Ill. 2d 286, 291.) A trier of fact may convict if it is satisfied of the defendant's guilt beyond a reasonable doubt. (*Collins*, 106 Ill. 2d at 261.) Under this standard, "[a] criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *Collins*, 106 Ill. 2d at 261.

Although the defendant's mere presence at the restaurant shortly before the fire erupted does not *necessarily* imply that she set the blaze, such an inference is not so improbable or unsatisfactory as to constitute grounds for reversal. The close time frame in question dispels our concern that some interloper gained access and started the fire. Indeed, the defendant did not claim anyone else set the fire. The defendant's contention was that the fire was an accident. There was neither evidence nor argument of an interloper. For this court to reverse would require us to conjure up the possible existence of such an interloper and would be a return to a prior and now improper stand-

ard of review that required the exclusion of every reasonable hypothesis of innocence as a condition to a guilty verdict in circumstantial evidence cases. Implicit in the dissenting opinion is an attempt to apply the "every reasonable hypothesis of innocence" test, which our supreme court has clearly rejected. See *Pintos*, 133 Ill. 2d at 291.

The question in the present matter is not whether learned jurists may have a reasonable doubt about the defendant's guilt, but whether such a doubt could reside with a rational trier of fact, *i.e.*, a properly impaneled and instructed jury. There is no claim in the present matter that the jury was either improperly impaneled or instructed, and while jurists might have concluded differently, such disagreement does not, *ipso facto*, make the jury's finding irrational.

The dissent refers to the case of *People v. Mason* (1991), 211 Ill. App. 3d 787, for the proposition that "suspicions and probabilities are not enough to convict." (*Mason*, 211 Ill. App. 3d at 790.) We agree with that proposition but disagree that the defendant in the present matter was convicted on mere suspicion and probabilities. In *Mason*, the appellate court overturned the defendant's conviction of burglary because the only evidence against the defendant was that he was seen by a police officer in an alley adjacent to a garage that was apparently, but not conclusively, burglarized. The defendant was in the company of two others, and all of them ran when they saw the police. The defendant was caught, but there was no evidence he ever entered the garage or removed anything from it, both essential requisites for proving burglary. There was no evidence that the defendant was found in possession of the allegedly stolen item, and although the garage showed signs of pry marks, no burglary tools were recovered. A witness testified that one of the men seen with the defendant had "something" in his hands, but the witness was unable to describe the object as to color, size, weight or shape. Although a car was parked in the alley adjacent to the garage, there was no showing that the car was registered to the defendant or any of the men in the group. *Mason*, 211 Ill. App. 3d at 790.

In the present matter, it was uncontested that the defendant was in the restaurant. Indeed, she was the last person in the restaurant, and the fire erupted shortly thereafter. There was strong, credible evidence that the fire was intentionally set.

The dissent also claims that, to support the guilty verdict in the present matter, a rational person would have to ignore that arson is ordinarily a crime of stealth, which the dissent points out was lacking in the present matter, or that the defendant was willing to eliminate her own job by burning down the restaurant. While such acts may be

odd, they are not inconceivable or illogical. Indeed, if a person could not be found guilty if he or she behaved oddly or against logic in a given case, there would be few convictions.

To be sure, this was a close case on the facts, and there was no direct physical evidence to link the defendant to the alleged crime. However, we note "the crime of arson is, by its very nature, secretive and usually incapable of direct proof." (*People v. Smith* (1976), 44 Ill. App. 3d 237, 241.) The circumstantial evidence in the present matter is similar to that which was adduced in *People v. Hanes* (1990), 204 Ill. App. 3d 35, in which the Appellate Court, Third District, affirmed arson and burglary convictions. In *Hanes*, the victim left her apartment at 8:30 p.m. and returned at 10 p.m. to find firemen outside of her apartment. After viewing the damage to her burned apartment, she walked outside to talk to police and saw the defendant, a former boyfriend with whom she had lived for six years before breaking off their relationship about a year before the fire, walking across the street. Police stopped defendant and recovered a clock radio from him that had been taken from the victim's apartment. As to whether the fire was intentionally started, the State in *Hanes* offered testimony by an arson expert who concluded after tracing burn patterns in the apartment that the fire started when a lamp either fell or was placed at the edge of the victim's bed and melted into the carpeting. No other sources of ignition were found. Daniel Patterson, a friend of defendant in *Hanes*, testified that he saw defendant at 7:30 the night of the fire, an hour before the victim left her apartment, and defendant attempted to sell him a clock radio. Patterson testified that "defendant also told him 'it's burning up,' though Patterson did not know what the defendant meant." *Hanes*, 204 Ill. App. 3d at 38.

The appellate court in *Hanes*, noting as we do the standard of review set forth in *Collins* and viewing all of the evidence in the light most favorable to the prosecution, affirmed the arson conviction despite a showing that the jury specifically determined it did not believe the lamp started the blaze. The jury sent a note to the trial court during deliberations stating: "None of us believe the origin of the fire was a lamp, but some type of motor." (*Hanes*, 204 Ill. App. 3d at 38.) After consulting with counsel for both sides about the note, all parties agreed that the jury should be instructed that its decision was to be based on the evidence presented. The jury subsequently found the defendant guilty of arson, aggravated arson, and residential burglary. The trial court vacated the aggravated arson conviction but sentenced defendant on the arson and burglary counts. In affirming the arson conviction, the appellate court noted that "[t]he State was not re-

quired to prove the nature of the object used to set the fire" (*Hanes*, 204 Ill. App. 3d at 39) and concluded that "regardless of whether the object was a lamp or a motor, a rational trier of fact could have found the defendant guilty of arson beyond a reasonable doubt." (*Hanes*, 204 Ill. App. 3d at 39.) In the present case, though the facts were susceptible of more than one conclusion, the jury's finding was rational.

The defendant next contends that the testimony of the State's expert, Terry Duncan, should have been excluded or a mistrial granted based on his testimony. The defendant advances two arguments: (1) Duncan failed to show that he employed special skills and knowledge in reaching his conclusion that the fire was arson; and (2) the defendant was unfairly surprised, and therefore greatly prejudiced, when Duncan offered an opinion as to the type of accelerant used to start the fire.

We begin by noting that the first of these arguments was waived by the defendant because she failed to include it in her written motion for a new trial or judgment notwithstanding the verdict. Although the defendant did raise this issue in arguing for a new trial before the circuit court, both a trial objection and a written post-trial motion are required to preserve an alleged error for appellate review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) Supreme Court Rule 615(a) allows a court of review to notice plain errors, those which deprive a defendant of a fair and impartial trial or any substantial error that occurs in cases in which the evidence is closely balanced. (134 Ill. 2d R. 615(a); *People v. Gonzalez* (1992), 238 Ill. App. 3d 303, 314.) In the present case, the evidence was closely balanced, and we will consider the merits of the argument. However, we find the defendant's claim unpersuasive.

For the defendant to prevail on appeal of a trial court's denial of a motion to strike, she must show that the trial court abused its discretion in failing to grant her motion. (*Clay v. McCarthy* (1979), 73 Ill. App. 3d 462, 465.) When arguing for a new trial, the defendant must show the trial court's ruling was against the manifest weight of evidence. (*Buford v. Chicago Housing Authority* (1985), 131 Ill. App. 3d 235, 243.) For the following reasons, the defendant's claims meet neither of these tests.

The competency of a witness to testify as an expert at trial is a matter for the sound discretion of the trial court. (*Buford v. Chicago Housing Authority* (1985), 131 Ill. App. 3d 235, 243.) An expert is properly qualified when (1) his opinion relates to a science, profession, business, or occupation and is beyond the knowledge or experience of the average juror; (2) he has sufficient skill, knowledge, or experience

so that his opinion will aid the trier of fact; and (3) the state of the art or scientific knowledge permits a reasonable opinion to be asserted by an expert. *First National Bank v. Sousanes* (1981), 96 Ill. App. 3d 1047, 1054.

■ The record contains ample evidence that Duncan was a trained, experienced arson investigator. His testimony touched on matters of chemistry, physics, and investigation technique that clearly were beyond the knowledge or experience of the average juror. It is true, as defendant claims, that some of Duncan's testimony was based on simple logic and deduction, matters that the jury could understand without expert explanation. However, this does not disqualify the expert testimony. A witness may testify as an expert if the witness has some special knowledge even though the average juror would also have some knowledge of the subject matter. *Binge v. J.J. Borders Construction Co.* (1981), 95 Ill. App. 3d 238, 242.

The defendant also claims that Duncan made several "impossible" statements of scientific fact which should have been barred. The defendant's argument appears to be that these allegedly incorrect facts misled the jury and cast sufficient doubt on the qualifications of Duncan to testify as an expert. We disagree.

The defendant's bare assertion that Duncan incorrectly stated matters of scientific fact is not supported in the record by citation to any authority that would prove her contention. The burden is on appellant to show the trial court abused its discretion in not striking these claimed errors. (*Clay*, 73 Ill. App. 3d at 465.) Even if the State's expert misstated some matters of scientific fact so as to call his expertise into doubt, the extent of a witness' knowledge or degree of his experience goes to the weight accorded his testimony, not to his competency to testify. (*City of Chicago v. Bank of Ravenswood* (1981), 93 Ill. App. 3d 52, 55.) Duncan admitted during his testimony that he held no degrees in chemistry or physics but understood elements of those sciences as they relate to arson investigation. Duncan made a sufficient showing that he employed special skills and knowledge in reaching his conclusions, and he was properly permitted to testify as an expert.

Also unavailing is the defendant's claim that a new trial should have been granted because she was unfairly surprised when Duncan named on cross-examination a specific type of accelerant he believed most likely started the fire. The defendant contends that, had she been told this information before Duncan's testimony, further experiments could have been conducted to disprove his contention. The defendant claims that the State violated Supreme Court Rule 412(a)(v)

(134 Ill. 2d R. 412(a)(v)), which requires the State, upon written motion of defense counsel, to disclose to defense counsel "any books, papers, documents, photographs or tangible objects which the prosecuting attorney intends to use in the hearing or trial or which were obtained from or belong to the accused." 134 Ill. 2d R. 412(a)(v).

To begin with, the State did comply with the defendant's request under Supreme Court Rule 412 by supplying the defense with a copy of Duncan's qualifications, his report, and other findings made in preparation for trial. The defendant made no specific request, after reading Duncan's report, that Duncan be required to name a specific accelerant. Such a request conceivably could have been made under Supreme Court Rule 412(h) (134 Ill. 2d R. 412(h)), which permits trial courts, upon a showing of materiality to the preparation of the defense, to require the State to disclose relevant material and information not covered under Supreme Court Rule 412(a). 134 Ill. 2d R. 412(a).

In any event, it is difficult to see how the defendant was unfairly surprised and prejudiced by Duncan's statement on cross-examination that the accelerant used to start the Kopy Kat fire most likely was "any medium-ranged petroleum-based product." At issue was whether *any* combustible substance was poured onto the kitchen floor the night of the fire because, if so, that fact could rationally support an inference that the fire was arson.

On direct and cross-examination, Duncan stated his opinion that some type of liquid accelerant had been poured onto the floor but he was unsure of the exact liquid used. Counsel for defendant then asked whether Duncan could narrow the group of accelerants he suspected had been used:

"Q. So you really didn't believe that gasoline was used, did you, when you were testing the tiles?

A. That's correct.

Q. You thought of something else, you have something else in mind besides gasoline when you took those samples, right?

A. I had a liquid accelerant in mind.

* * *

Q. No lead candidates?

A. No.

Q. Bunch of candidates?

A. Yes.

Q. Tell me what the bunch was.

A. Well, you can have kerosene, you can have charcoal light, you can [have] lighter fluid, any medium-ranged petro-

leum-based product. I did not believe in this particular instance a flammable liquid was used so that ruled [out]—put us back in mid-range petroleum."

The defendant's claim that this last answer by Duncan constituted unfair surprise and prejudice can be characterized most charitably as an exaggeration. The defendant knew from pretrial discovery that the State's expert was going to claim that some type of accelerant was used to start the fire. The defendant might reasonably have made her own chemical tests on a range of accelerants. The record discloses that the range of accelerants is limited and that medium-range petroleum accelerants such as kerosene are commonly suspected in arson investigations. In addition, as we have noted, the issue was whether *any* accelerant had been used, not which one.

Next, the defendant argues that a mistrial should have been granted or the testimony of a State's witness stricken because the witness was allegedly coached while testifying by her mother, a spectator at trial. We find no merit in this argument for three reasons: (1) it was not shown that the witness was in fact coached or did not testify truthfully; (2) the trial court dealt effectively with the incident; and (3) whatever impact the incident might have had on the jury was probably beneficial to defendant rather than prejudicial.

Aimee Manis, a waitress at the Kopy Kat Restaurant, testified for the State that she saw defendant inside the back area of the restaurant just after closing time the night of the fire. The incident of supposed coaching came to light when an alternate juror reported to the bailiff that a spectator, who later turned out to be the witness' mother, had on several occasions mouthed the words "I don't know" while her daughter was testifying.

The judge immediately interviewed the juror with counsel present in the jury room. The juror said that she had mentioned the incident to other jurors, and the judge thereupon interviewed all the other jurors. The judge asked whether any of them had noticed a spectator in the courtroom trying to communicate with Manis during her testimony. The record indicates that all the jurors indicated "no," but defense counsel maintains, and did at trial, that one of the jurors did not respond to the question.

The trial judge interviewed Manis, who denied that her testimony was being directed by her mother. She asserted that she was testifying truthfully. The judge also interviewed Manis' mother, who denied trying to communicate with her daughter during testimony. The judge ordered the mother to leave the courtroom until after her daughter finished testifying and took steps to assure that Aimee Manis would

not communicate with her mother while the judge was considering how to deal with the incident. Defense counsel moved for a mistrial, but the motion was denied.

The defendant claims that she was denied "an adequate and full opportunity to impeach" Manis. The defendant points out that Manis responded "I don't remember" to 12 questions by defense counsel on cross-examination, but only responded "I don't remember" once during direct examination. However, Manis' faulty memory would seem impeaching in itself. Additionally, the record indicates that the matters to which Manis claimed to have no memory did not alter her substantive testimony: that she saw defendant in the restaurant after closing.

In arguing that the alleged coaching incident constituted grounds for dismissal, defendant cites an Iowa case (*State v. Hackett* (Iowa 1972), 197 N.W.2d 569), which not only fails to support defendant's position, but argues against it. The Iowa Supreme Court declared in *Hackett* that misconduct of a spectator at trial may constitute grounds for a mistrial if the misconduct is prejudicial to the defense or will influence the verdict. (*Hackett*, 197 N.W.2d at 572.) The court also made it clear, however, that the trial court had broad discretion in dealing with spectator outbursts and "[s]uch discretion will not be disturbed unless it clearly appears it has been abused." *Hackett*, 197 N.W.2d at 573.

Illinois cases involving courtroom spectator incidents also declare that the trial judge has wide discretion in dealing with such matters and determining whether a mistrial is justified. In *People v. Yates* (1930), 339 Ill. 421, a juror reported to the trial judge that he had noticed a spectator waving her hands and nodding to a witness. The judge warned the spectator in the presence of the jury. The Illinois Supreme Court held there was no prejudice to the defendant because of the incident and declared that "[h]aving had the matter brought to his attention it was the duty of the court to warn her against such conduct." *Yates*, 339 Ill. at 425.

In *People v. Howard* (1991), 147 Ill. 2d 103, 145, a loud outburst by a spectator was held to be not so prejudicial or inflammatory that a mistrial was warranted. In *People v. Johnson* (1974), 20 Ill. App. 3d 926, 932, no prejudice to defendant was found when a trial court decided not to explain to the jury the details of the courtroom incident in which the judge noticed a spectator signalling from the back of the courtroom. Again, the appellate court deferred to the trial court's reasonable handling of the incident.

■ In the present case, the trial court's handling of the alleged coaching incident was a reasonable response to the situation and well within its discretion. We note that this incident was neither an outburst, as in *Howard*, nor an incident of obvious coaching. Indeed, only one alternate juror claims to have noticed the incident in the present case, and Aimee Manis and her mother both claimed they were not attempting to communicate during testimony. The defendant has offered no evidence to the contrary. The most logical effect of this incident was to impeach Manis and weaken the State's case, as Manis was a prosecution witness.

The dissent also points out that the State's witness Aimee Manis was impeached. We agree, but impeachment goes to credibility and is for the jury, not this court, to weigh. "A reviewing court may not substitute its judgment for that of the trier of fact with respect to the weight of the evidence or the credibility of the witnesses." (*People v. Draheim* (1993), 242 Ill. App. 3d 80, 88.) Whatever impeachment there was of Aimee Manis, the jury heard it and made its own judgment based on *all* the evidence. We are satisfied that the nature of the impeachment was not so substantial as to raise a reasonable doubt as to guilt.

The defendant's final contention is that she was entitled to a mistrial because Terry Duncan, the State's arson expert, permitted the destruction of potentially exculpatory or impeaching evidence. This contention is unavailing.

The record discloses that both the State and the defendant had access to samples of burned tiles from the restaurant's kitchen floor. Both sides, in fact, conducted some tests on burned tiles from the restaurant's kitchen floor before trial. The defendant's contention that she was prejudiced when Duncan allowed his samples to be destroyed is, therefore, weak.

In addition, Duncan readily admitted that his chemical tests determined that no accelerant (other than mineral spirits likely attributable to the glue used to affix the tiles) was detected in the burned tile samples. Duncan testified that this result was not unusual and did not alter his findings, because a fire such as the one at the Kopy Kat could consume any accelerant so that none would be detected later during lab tests.

Nonetheless, the defendant argues that she was prejudiced because destruction of the State's tile samples deprived her of the opportunity "to prove that in fact no accelerant of any kind existed in the samples." Further testing would not have advanced defendant's position to any meaningful degree. The absence of all accelerants, in-

cluding mineral spirits from the tile glue, would not have invalidated Duncan's conclusion.

■ The defendant correctly notes that the destruction of evidence will not be grounds for dismissal if the destruction did not prejudice the defendant. (*People v. Lopez* (1982), 107 Ill. App. 3d 792.) Here, the defendant was not prejudiced by the destruction of the tiles. The defendant also cites *People v. Vargas* (1983), 116 Ill. App. 3d 787, 794, for the proposition that when evidence is intentionally destroyed, it is not necessary to establish that the defense was prejudiced by the missing evidence. However, the court in *Vargas* said this principle does not necessarily apply if the destruction was inadvertent and not committed in bad faith. (*Vargas*, 116 Ill. App. 3d at 794.) In the present case, there was no bad faith on the part of the State's expert, nor were the destroyed tiles crucial to the defendant's case.

For the above reasons, the judgment of the circuit court of Ogle County is affirmed.

Affirmed.

WOODWARD, J., concurs.

JUSTICE BOWMAN, dissenting:
I respectfully dissent.

In a criminal case, the State must prove beyond a reasonable doubt that the crime was perpetrated by the person accused. (*People v. Urbana* (1959), 18 Ill. 2d 81, 85.) Mere probabilities will not support a conviction. (*People v. Jackson* (1961), 23 Ill. 2d 360, 365.) Suspicious circumstances are not enough to exclude doubt. (*People v. Sustak* (1958), 15 Ill. 2d 115, 122.) Suspicious circumstances, although of probative value, cannot substitute for proof sufficient to support a conviction. *In re Whittenburg* (1976), 37 Ill. App. 3d 793, 795.

After reviewing all of the evidence in a light most favorable to the prosecution (see *People v. Hendricks* (1990), 137 Ill. 2d 31, 62), I do not believe any rational trier of fact could find beyond a reasonable doubt that Nancy Smith was the person who set fire to the Kopy Kat restaurant. For purposes of analysis, I assume that the fire was caused, as shown by the State's evidence, by someone igniting a flammable petroleum product poured over the length of the kitchen floor.

As the majority points out, the evidence of defendant's guilt is entirely circumstantial. Out of all the evidence, the majority focuses almost exclusively on the facts that defendant was the last person seen leaving the restaurant and the fire of incendiary origin was first ob-

served shortly thereafter. However, mere presence at the scene of a crime is insufficient to establish guilt. (*People v. Boyd* (1959), 17 Ill. 2d 321, 327.) Although the evidence may have established a strong suspicion that defendant was somehow involved because she was near the scene of the crime, " 'suspicions and probabilities are not enough to convict.' " (*People v. Mason* (1991), 211 Ill. App. 3d 787, 790, quoting *People v. Johnson* (1976), 43 Ill. App. 3d 428, 431.) I believe it is necessary to examine the facts, as disclosed by the evidence, in their entirety.

The undisputed evidence reveals that defendant was employed by the Kopy Kat restaurant as head waitress. On the evening of the fire, defendant and the two owners of the restaurant were catering a party in Chana, Illinois, a distance of approximately 10 miles from the restaurant. The owners remained at the party in Chana until midnight. Sometime prior to midnight, defendant left the party in Chana and drove her car to the Kopy Kat, arriving there either shortly before or shortly after the restaurant's 11 p.m. closing time. She parked her car in front of the restaurant, which is located on a main business thoroughfare. A Shell gas station is located across the street. Other businesses nearby include a lawyer's office, a bank, and a late-night bar. The entire area is well lighted.

On entering the restaurant, defendant proceeded to cash out the register. At closing, usually one of the owners cashed out the register, although defendant had previously done so in the owners' absence. Defendant talked to some of the employees and cleaned off a dining table. The last person to see defendant inside the restaurant before the fire was Aimee Manis. One of the first persons to see defendant outside the restaurant before anyone noticed the fire was also Aimee Manis. Aimee was the State's polestar witness for testimony which tended to establish that defendant probably started the fire.

Aimee testified that she is age 18 and at the time of the fire had been employed as a Kopy Kat waitress for one month. On the day of the fire, she worked a 3 to 8 p.m. schedule. Other persons working that day were Mary Jergens, the waitress; Jody Harvey, the dishwasher; and Michael LaRush, the cook. After finishing her work shift, Aimee left the restaurant at 9:30 p.m. to drive around town with Judy Pontnack, a friend. Aimee and Judy returned to the restaurant at 10:30 p.m. to visit with Mary Jergens and other employees.

Defendant arrived about 11:05 p.m. and parked her car directly in front of the restaurant. Mary Jergens had left the restaurant before defendant arrived, but Aimee did not see Mike or Judy leave. After leaving the restaurant, Aimee walked a distance of approximately one

block and sat on a park bench. From there she saw Mike LaRush drive his car into the Shell station across the street from the restaurant. She then saw Jody Harvey directly across the street from her walking in a direction away from the restaurant. Aimee left the bench, walked to the Shell station, and used the pay phone to call her boyfriend at his place of employment. To get to the Shell station she had to cross the street in front of the restaurant. The only light on inside the restaurant was in the cooking area. She saw Nancy Smith standing near the light. Defendant's car was parked in front of the restaurant.

Aimee talked on the phone for four minutes and then walked back across the street towards the restaurant, passing within two to three feet of its large, dark picture windows. The time was 11:20 p.m. She did not recall if any lights were on. She saw no smoke or fire. Defendant's car was still parked in front.

Aimee continued walking to the corner which was one block away. While waiting for the traffic signal to change, she observed defendant, Nancy Smith, in her car, which was stopped and partially into a right-hand turn at the intersection, approximately three to four feet from Aimee. The car's dome light was on and defendant was "messing with something on the seat in front of her." Aimee did not know what Nancy was doing, but her car was stopped while the traffic light in front of her was green. Aimee stated that Nancy saw her standing at the corner. Aimee did not wave at Nancy nor did Nancy wave at Aimee. This was not unusual to Aimee. In an earlier statement to investigators, Aimee stated that defendant never waved at her and defendant did not like her too well.

Aimee's testimony was impeached with interview statements she made to investigators shortly after the fire. In these statements Aimee stated that Mary left the restaurant at 11:10 and the remaining customers left between 11:15 and 11:20. Aimee left the restaurant as soon as defendant entered and started counting money in the cash register. She saw Judy leave the restaurant by the front door after she, Aimee, left the Shell station and was walking back towards the restaurant. She did not see defendant inside the restaurant then. The time was 11:20. With regard to the lights inside the restaurant, she did not know if the lights were kept on after closing. When she first walked by the restaurant, she saw defendant walking near the waitress station which leads to the kitchen and hallway back to the coolers. A friend called her at 12:30 a.m. and told her the Kopy Kat had burned down. Aimee stated that she was not a friend of defendant and that defendant was not nice to her.

Tom Miller, chief of police of the City of Oregon, testified that at 11 p.m. on the night of the fire he was working surveillance of the Shell gas station and was seated in his car approximately one block away where he had a view of the front of the Kopy Kat restaurant. The business area near the restaurant is extremely well lighted. At approximately 11:15 p.m., for a total of three minutes, he watched as Mike LaRush came out the front door of the restaurant, ran to his car, which was parked down around the corner, talked to a passerby, and drove off. Miller changed surveillance locations at 11:17 or 11:18 by moving his car one-half block away. He did not see anyone else leave the restaurant.

At approximately 11:20, Miller chased a speeding car. Approximately five or six minutes later, while driving back to the area of the restaurant, he observed smoke and saw the roof of the Kopy Kat's back kitchen area in flames. He called to report the fire about 11:30 or 11:31. The time of Miller's call was confirmed by testimony of the police radio operator who received and made a record of Miller's call. Miller estimated 14 or 15 minutes passed from the time he saw LaRush leave the restaurant until he reported the fire. Miller could not say if defendant's car was parked in front of the restaurant during his surveillance, but that a number of cars were parked up and down the street in front of the restaurant at that time.

Mike LaRush testified that he worked from 5 p.m. until closing as a cook and helper. Just before closing, he swept and mopped the kitchen floor. Nancy Smith arrived just before closing and helped Aimee close out the register. He had seen Nancy close out the register on prior occasions. One of his duties was to turn off all the appliances in the kitchen and dishwashing room behind the kitchen and check that the back doors were closed. He did not remember if he checked that the doors were locked that night. The night of the fire, he had a "funny feeling" because the owners, or Grandma, another employee, who usually double check that the appliances were turned off, were not there that evening. He left the restaurant shortly after 11 p.m.

Mary Jergens, a Kopy Kat waitress, testified that on the night of the fire she departed the restaurant at 10:55 or 11 p.m. with her boyfriend. Earlier, about 9 or 10 p.m., she noticed an odor of burnt rubber or something hot in the area of the kitchen. Mary inquired of other employees if they smelled the burning odor, but they did not. Mary could not recall seeing defendant in the restaurant that evening.

Kopy Kat employee Jody Harvey testified that defendant entered the restaurant prior to 11 p.m. Her car was parked in front of the restaurant. There were two customers inside as Nancy checked out

the register. Jody talked to defendant and made the following observations. She appeared to have been drinking but was not intoxicated. Otherwise, she appeared normal. While defendant was checking out the register, Jody made sure the back door was locked. He locked one of the three doors and made sure the lights were off. Only defendant and Judy Pontnack were in the restaurant at the time he left. It took him two minutes to walk to his nearby home. While walking home, he observed defendant drive by in the direction of Chana, Illinois. Twenty or thirty minutes after leaving the restaurant, he heard fire engines and observed fire in the vicinity of the Kopy Kat restaurant.

Judy Pontnack testified that, on the night of the fire, she was with her friend Aimee and was having dinner at the Kopy Kat. She observed defendant enter the restaurant about closing time and proceed to check out the cash register and clean off a table. Aimee and Judy were present when defendant arrived and Mike LaRush was just leaving the restaurant. Aimee and Jody left and only Judy and defendant remained. Judy left at 11:08 p.m. Defendant's car was then parked in front of the restaurant. Judy arrived home at 11:10 p.m. She recalls looking at a clock when she entered the house. Ten minutes after arriving home, she smelled smoke and heard sirens.

The police department dispatcher testified that a business routine punch card indicated that the Kopy Kat restaurant fire was reported at 11:31 p.m. and the fire department was notified at 11:32 p.m.

The owner of the roller rink where Aimee's boyfriend worked testified that at 11:10 p.m. Aimee telephoned the business establishment and asked to speak to her boyfriend.

To support a guilty verdict, a rational person would have to totally ignore a number of realities of life and inferences arising from the uncontroverted evidentiary facts. First of all, arson is ordinarily a crime of stealth, *i.e.*, an act of proceeding furtively, secretly, or imperceptibly. In light of all the evidence, not only is the element of stealth totally lacking, but the opposite is reflected. The prosecution's evidentiary theory as to the cause of the fire was that the person who started the fire did so by pouring a petroleum liquid over the length of the kitchen floor and then setting it afire. Any such incendiary fire would be immediately visible through the large front picture windows of the restaurant to any person walking or driving by. This is particularly true if one accepts the majority's factual premise that the inside of the restaurant was dark when Aimee walked past after leaving the Shell station.

The rational person would also have to believe that, after pouring the flammable liquid on the floor and igniting it or arranging to ignite

it, defendant left the restaurant; entered her car, which was parked in front in a well-lighted and well-travelled area; and drove away, only to stop her car in an intersection approximately a block away, a few feet from Aimee, a co-worker at the restaurant.

Finally, a rational person would have to believe that the defendant was willing, for some unexplained reason, to eliminate her own job, as a result of burning down the restaurant. Although the State is not required to prove a motive to support a guilty verdict, the rational fact finder would have to ignore the total absence of any conceivable motive defendant would have to start the fire. The presence or absence of motive is important and probative in circumstantial evidence criminal prosecutions. *People v. Hendricks* (1986), 145 Ill. App. 3d 71, 104, *rev'd on other grounds* (1990), 137 Ill. 2d 31.

The majority notes that the close time frame between defendant's presence at the restaurant and the start of the fire dispels concern that some interloper gained access and started the fire. Dispelling concern does not relieve the State of its responsibility to prove that Nancy Smith, and no other person, started the fire. If a conviction is to be sustained, it must rest on the strength of the State's case and not on the weakness of the defendant's. *People v. Lewis* (1968), 97 Ill. App. 2d 255, 261.

The majority notes that the case before us is similar to that of *People v. Hanes* (1990), 204 Ill. App. 3d 35. I disagree. In *Hanes*, the defendant had a motive. He was physically handicapped and wanted his girlfriend to take care of him. After living with him for six years, the girlfriend broke up with defendant against his wishes. Plus, there was additional incriminating evidence in *Hanes*. One week before her apartment was set on fire, defendant told his former girlfriend he was going to get even with her. On the night of the fire, defendant was observed in the immediate area of the apartment. He had possession of a radio which the evidence showed had been taken from the girlfriend's apartment the day of the fire, although defendant had no consent to enter the apartment or to take the radio. He also made admissions, telling the police, "I fucked up again and I'm going to go to jail for a long time this time," and telling a friend shortly after the fire that "it's burning up" as he tried to sell the radio. *Hanes*, 204 Ill. App. 3d at 37-38.

Although the evidence here may have established a strong suspicion that Nancy Smith was somehow involved in the fire because she was near the scene of the crime shortly before it occurred, " 'suspicions and probabilities are not enough to convict.' " (*People v. Mason* (1991), 211 Ill. App. 3d 787, 790, quoting *Johnson*, 43 Ill. App. 3d at

431.) A conviction will not be set aside unless the evidence is so unsatisfactory as to justify a reasonable doubt of defendant's guilt. (*People v. Sutherland* (1992), 155 Ill. 2d 1, 17; *People v. Campbell* (1992), 146 Ill. 2d 363, 375.) I find that the totality of the evidence in the record before us, even when viewed in a light most favorable to the State, fails to reach that level of satisfaction necessary to allow the conclusion that defendant was proved guilt beyond a reasonable doubt.

The decision of the majority emasculates any commonsense meaning of our constitutionally enshrined phrase "proof beyond a reasonable doubt." To twist the facts before us into the definition of "proof beyond a reasonable doubt" is to hurl a barbed spear into the beating heart of a definition which for so long in our history has protected the innocent against the awesome powers of the State to charge and convict its citizens of crimes.

Accordingly, I would reverse the finding of the trial court which sustained the jury's verdict.